DAVID ROBERT PROCTOR, a/k/a John Stanley
Williams, a/k/a Robert Sylvester Proctor,
jr. and RONALD STANLEY
PROCTOR v. STATE OF
MARYLAND

[No. 21, September Term, 1981.]

*Decided October 8, 1981.*

The cause was submitted on briefs to Gilbert, C. J., and
Morton and Thompson, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Victoria S. Keating, Assistant Public Defender,* for appellants.

Submitted by *Stephen H. Sachs, Attorney General, Patricia E. McDonald, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Jimmy L. Hill, Assistant State's Attorney for Montgomery County,* for appellee.

THOMPSON, J., delivered the opinion of the Court.

David Robert Proctor and Ronald Stanley Proctor, the appellants, were tried by jury in the Circuit Court for Montgomery County and convicted of theft. Subsequently, David Robert Proctor was sentenced to a term of five years' imprisonment and Ronald Stanley Proctor was sentenced to a term of three years' imprisonment.

The appellants present three questions:

1. Whether the evidence was sufficient to sustain the convictions;
2. Whether the trial court erred in allowing the State's witness, Rupert Curry, to testify as to the value of the stolen guns; and
3. Whether the evidence was sufficient to support the sentences imposed.

## FACTS

Jerome Proctor testified for the state as part of a plea agreement. He stated that on March 11, 1980, he was outside his home with Roderick McKinney and Alonso Clayton, when he was approached by his brother, David Robert Proctor, who asked him to "run him over this girl's house." Jerome agreed and the four entered into a green Pontiac LeMans registered to a third brother, Ronald Proctor. Jerome testified that after driving a short while they encountered Ronald Proctor driving a white Ford Torino. The two cars pulled over and Robert proceeded to exit the green car and enter the white Torino with Ronald. The two

cars drove towards a residential area of Rockville and stopped in front of a single family home. Jerome stated that Robert, McKinney and Clayton went up to the house. A few minutes later McKinney and Clayton returned carrying some guns. The guns were placed in the back of the green car and the two cars left the area. On their way home both vehicles were stopped by the police.

Alonso Clayton also testified for the state as part of his plea agreement. His testimony was similar to Jerome's in that he placed himself, Jerome and McKinney in the green Pontiac and Robert and Ronald in the white Ford leading the way to Rockville. Clayton testified that the two cars parked in front of a single family home whereupon McKinney went to the door, knocked, and returned to the car stating that no one was home. According to Clayton, Jerome suggested that they leave but "Bobby [Robert] said since there was nobody in that home let's hit it." Robert then went up to the front door accompanied by Jerome and kicked it in. Clayton testified that he and McKinney followed Robert and Jerome into the house. McKinney and Robert went upstairs and Jerome and Clayton ran downstairs where they found a cabinet containing guns. The guns were seized and the four subsequently left the house. Clayton admitted that he had signed statements in which he averred that neither Robert nor Ronald Proctor had anything to do with the instant offenses but stated that they were not true. These statements were allegedly made at the instigation of Robert and Ronald who told him if he would sign it "they could beat this charge." Clayton stated that he had originally agreed to plead guilty but would not testify for the state, however, upon learning that he might only receive 18 months instead of the possible ten year sentence, he thought he "might as well go ahead and do it."

Jerome Schaffer testified that at approximately 2:00 p.m. on March 11, 1980, he was driving on Maryland Avenue when upon looking to the left he observed three individuals in the yard of a residence. One individual was carrying what appeared to be "three long guns . . . one of which appeared to be a shotgun." The individual carrying the guns appeared to

be walking to a vehicle parked along the curb described as a "white over green or perhaps light green over a darker green" full-sized General Motors automobile, being either a Pontiac, Oldsmobile or a large Chevrolet. Schaffer drove past the house, turned around and drove past again. At some unspecified point he observed a second vehicle which was painted a white or off-white color. Schaffer was unable to recall where the white car was located in reference to the green. He then observed the three individuals enter the green car and drive away at a fast rate of speed. Schaffer looked toward the house and saw that the front door had been left open. He then observed a Montgomery County Police cruiser heading towards him. He signalled to the officer and told him that he believed there had been a housebreaking.

Officer Ronald Gabriel testified that he was the officer whom Schaffer had flagged down. From Schaffer and another individual at the scene, Gabriel received descriptions of the housebreaking suspects and the vehicles involved. After speaking with the two individuals, Gabriel went to the house in question and checked the front door. He found that it had been kicked in. He subsequently put out a bulletin based on the descriptions given.

Officer Edward P. Hickey testified that he was involved in the stop of the two cars. He stated that he had observed three black males in the green vehicle and two in the white vehicle and that prior to stopping the automobiles, the green vehicle had been in front.

Detective David Hutchinson testified that he had been called as an investigator in the case. From Ronald Proctor, the driver of one of the vehicles and from Jerome Proctor the driver of the other, Hutchinson obtained consent to search both cars. From the back of the green car a television, typewriter, jewelry box and five guns were seized. Additionally, Hutchinson testified that both cars were listed with the Department of Motor Vehicles as belonging to Ronald Proctor.

Ronald Proctor testified stating that on the day in question, Robert, Jerome, Clayton and McKinney decided to visit some girls they had met the previous weekend. They took two separate cars; Jerome driving the green and Ronald driving the white. Ronald stated that on the way he stopped to get gas with Robert in the car, and the others left in the green car stating they would be back. Subsequently the green car returned and the driver signalled to follow them to the girls' house. The green car stopped in front of a house while Ronald turned his car around and parked. According to Ronald, by the time he had parked the car, the three were running out of the house with some guns. He stated that they did not put the guns in his car because he drove off before they had a chance.

## Sufficiency of the Evidence

The incriminating evidence against appellants, Ronald and Robert Proctor, consists primarily of the testimony of two witnesses: Jerome Proctor, brother of the appellants, and Alonso Clayton. The two witnesses' testimony, while contradictory as to certain specificities, placed both appellants at the Maryland Avenue residence and showed both of them to be an integral part of the crime. It is clear, however, that an accused cannot be convicted upon the uncorroborated testimony of an accomplice.[1] *Brown v. State,* 281 Md. 241, 378 A.2d 1104 (1977). *See also, Hillard v. State,* 286 Md. 145, 158, 406 A.2d 415 (1979); *Bennett v. State,* 283 Md. 619, 392 A.2d 76 (1978); *Bishop v. State,* 39 Md. App. 384, 385 A.2d 1206, *cert. denied,* 283 Md. 729 (1978); *Jeandell v. State,* 34 Md. App. 108, 366 A.2d 79 (1976); *Borza v. State,* 25 Md. App. 391, 335 A.2d 142, *cert. denied,* 275 Md. 746 (1975). Thus, the issue is whether the state met its burden of introducing sufficient corroborative evidence to sustain the convictions.

---

1. The test of whether a witness is an accomplice is whether he could be convicted for the offense charged against the defendant, either as principal or accessory before the fact. Watson v. State, 208 Md. 210, 217, 117 A.2d 549 (1955); Bishop v. State, 39 Md. App. 384, 389-90, 385 A.2d 1206, *cert. denied,* 283 Md. 729 (1978).

With respect to the degree of corroborative evidence the Court of Appeals observed in *Brown v. State, supra,* 281 Md. at 244:

> "Not much in the way of evidence corroborative of the accomplice's testimony has been required by our cases. We have, however, consistently held the view that while the corroborative evidence need not be sufficient in itself to convict, it must relate to material facts tending either (1) to identify the accused with the perpetrators of the crime or (2) to show the participation of the accused in the crime itself.... If with some degree of cogency the corroborative evidence tends to establish either of these matters, the trier of fact may credit the accomplice's testimony even with respect to matters as to which no corroboration was adduced.... That corroboration need not extend to every detail and indeed may even be circumstantial is also settled by our cases." (citations omitted).

Aside from the accomplice's testimony implicating the appellants, corroborative evidence has been adduced from the testimony of Jerome Schaffer, Officers Gabriel, Hickey and Hutchinson, and the appellant Ronald Proctor. First, Jerome Schaffer testified that he observed three individuals in the yard of a residence, one of whom appeared to be carrying rifles. Although his description of the vehicles involved was hazy, he was nevertheless able to note the existence of two cars; one being a "white over green or perhaps light green over a darker green" full sized General Motors automobile and the other being a white or off-white color. Upon their departure Schaffer observed that the front door of the residence had been left open. He thereupon flagged down Officer Gabriel and gave him a description of the individuals and the cars involved. Officer Gabriel testified that he put out a bulletin for a white car and a green car which had been seen in the area of the burglary. Officer Hickey testified that within minutes of the bulletin he stopped two vehicles meeting such description, arrested the

individuals and impounded the cars. The five individuals arrested were later identified as the two witnesses, Jerome Proctor and Alonso Clayton, the two appellants, Ronald and Robert Proctor, and Roderick McKinney. Finally, Ronald Proctor testified in his own defense. Corroborating evidence was adduced in that he admitted being at the scene of the Maryland Avenue burglary.

In *Jeandell v. State, supra,* 34 Md. App. at 110, this Court noted that "[i]t would be sufficient by way of corroboration for the State to show, by way of non-accomplice evidence that the appellant was in the company of the perpetrators of the crime in the general vicinity of the crime scene and at about the time when the crime occurred." *See also, Ham, Lee, Bailey and Cole v. State,* 7 Md. App. 474, 480-81, 256 A.2d 362 (1969), *cert. denied,* 256 Md. 745 (1970). Such fact was clearly demonstrated in the present case in that both appellants were arrested along with the accomplices minutes after the burglary occurred. This evidence, along with the observation of the vehicles by Jerome Schaffer and the admission by Ronald Proctor as to his association with the accomplices at the time of the burglary, provides sufficient corroboration of the accomplices' testimony under the standard established in *Brown* to support the conviction of both appellants, Ronald and Robert Proctor.

## Testimony as to the Value of the Stolen Goods

The appellants contend that the trial court erred in allowing the State's witness, Rupert Curry, to testify as to the value of the stolen guns. Curry, the grandson of the deceased owner of the guns, testified that he was familiar with the guns in that he had taken care of them since his grandfather's death two years prior to this case. Additionally, he testified that he owned a gun similar to the stolen shotgun.[2] In *Lamot v. State,* 2 Md. App. 378, 383, 234

---

2. Curry estimated the value of the shotgun to be approximately $1200. According to Curry, the total value of the guns was approximately $2500. The basic question is whether the value of the stolen goods exceeded $300. Although Curry's ability to place a specific value on each of the guns is border line, it is obvious that the value of the guns exceeded $300.

A.2d 615 (1967), we noted: "One familiar with the value of property is competent to testify on this question." For the same reasons as set forth in *Lamot,* we find no error in the admission of Curry's testimony as to the value of the guns.

## Sufficiency of the Evidence to Support Appellant Robert Proctor's Sentence

The appellant, Robert Proctor, contends that the evidence was insufficient to support his sentence in that no evidence was adduced as to the value of goods taken with respect to him. As previously indicated, Rupert Curry testified for the state regarding his familiarity with the guns in question as to his estimation of their value. During his testimony no objections were offered by either defense counsel until the following transaction occurred:

"Q. Have you ever had occasion to be the recipient of any offers to purchase those guns?

Mr. Hardcastle: Objection.

The Court: Do you have any, Mr. D'Erasmo and Mr. Hardcastle, have any real reservations about the fact that these guns had some value?

Mr. D'Erasmo: Mr. Hardcastle can speak for himself. I have no objection to the officer testifying as to value. Perhaps Mr. Hardcastle would have an objection I should have thought of.

The Court: Do you have an objection?

Mr. Hardcastle: Yes.

The Court: We'll let him testify as to your defendant, Mr. D'Erasmo, and you disregard it as to the other defendant. Go ahead."

No further evidence was adduced by the state establishing the value of the stolen guns. Thus, with respect to appellant Robert Proctor, the record contains no evidence as to the value of these items. The issue then becomes whether his conviction of the crime of theft can be sustained despite this void.

The recently consolidated Maryland theft statute under which appellants were charged provides, in part:

"§ 342 *Theft.*

(a) *Obtaining or exerting unauthorized control.* — A person commits the offense of theft when he willfully or knowingly obtains control which is unauthorized or exerts control which is unauthorized over property of the owner, and:

(1) Has the purpose of depriving the owner of the property; or ..." Md. Ann. Code, art. 27 § 342 (1957, 1976 Repl. Vol., 1980 Cum. Supp.).

Unlike the previous larceny statutes, see Md. Ann. Code (1957, 1976 Repl. Vol.) art. 27 § 340-343A, the newly enacted § 342 does not include among its elements a showing of value. The issue of value becomes relevant only with respect to the imposition of a penalty, in that, where the stolen items have been shown to have a value in excess of $300 the offense will be deemed a felony and the sentence imposed will be greater as opposed to where the worth is found to be less than $300 and the offense is viewed as a misdemeanor. See, § 342 (f). Thus, it appears that a defendant can be found guilty of theft without any showing of the value of the stolen property. However, where no evidence of the value of the goods has been adduced, the items must be deemed to have a worth less than $300 and as such, the defendant will be sentenced accordingly under the misdemeanor provisions of § 342 (f) (2).

That the legislature intended this result is further evidenced by viewing the new definitional section, § 340, in conjunction with § 342. As part of the definition of the word "value" the legislature has stated:

"(1)(4) When it cannot be determined if the value of the property or service is more or less than $300 ... its value shall be determined to be an amount less than $300."

It appears that the state has satisfactorily demonstrated all of the elements of the crime of theft with respect to both appellants, but, there is no evidence of the value of the goods stolen with respect to appellant Robert Proctor. Thus, such goods will be deemed to have a value of less than $300. As such, we hold that the trial court erred in imposing the higher penalty upon appellant Robert Proctor. For this reason, we shall vacate the sentence as to this appellant, with instructions to the trial judge to impose a new sentence in accordance with the principles we have enunciated.

### Sufficiency of the Evidence to Support Appellant Ronald Proctor's Sentence

Appellant Ronald Proctor contends that his sentence should be vacated if Robert Proctor's sentence is vacated on the basis of "fundamental fairness."

We find no relation between the sentence imposed upon the two appellants other than their involvement in the same offense. So called "fundamental fairness" does not require that a trial judge impose a lighter sentence on one criminal simply because another was able to have his penalty reduced because of a "technicality."

> *Judgment as to Ronald Proctor affirmed.*
>
> *Sentence as to Robert Proctor vacated.*
>
> *Case remanded for imposition of a proper sentence.*
>
> *One half of the costs to be paid by Ronald Proctor.*
>
> *One half of the costs not reallocated pursuant to Maryland Rule 1082 f.*