878 A.2d 678

**Ronald C. MOORE**

v.

**STATE of Maryland.**

**No. 1289, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

July 12, 2005.

306

Michael R. Malloy (Nancy S. Forster, Public Defender, on brief), for appellant.

Celia A. Davis (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MEREDITH KENNEY, RAYMOND G. THIEME, JR., (Retired, Specially assigned), JJ.

THIEME, J.

A jury sitting in the Circuit Court for Wicomico County convicted Ronald C. Moore, appellant, of theft of less than $500; receiving a stolen credit card; and stealing a credit card belonging to another. The court merged the credit card convictions and sentenced appellant to two consecutive 18 month terms of imprisonment. On appeal, Moore presents one question, which we have rewritten as follows: [1]

Did the circuit court err by failing to merge the credit card convictions with the theft conviction?

For the following reasons, we vacate the sentence and remand.

## FACTUAL AND PROCEDURAL HISTORY

At approximately 6:20 a.m. on October 11, 2003, the Salisbury Police Department received a report of a robbery at the Thrift Travel Inn in room 208. Several officers reported to the scene.

Officer Timothy Shearin testified that upon arrival he learned that room 208 was registered to Mike Lee Ivey, who alleged that he had been assaulted and robbed of his wallet that contained several credit cards and $7.00. Ivey described three suspects: a black male, approximately 38 years old, 6 foot to 6 foot 2 inches in height, wearing all black clothing; a

---

1. Appellant originally posed two questions, but on March 15, 2005, he voluntarily withdrew the second question. The questions he presented are as follows:

   1. Did the lower Court err by allowing Appellant to be convicted for theft as well as for credit card theft and by failing to merge theft into credit card theft?

   2. Did the lower Court err by sentencing Appellant to more than ninety days on the § 7-401 theft conviction?

white female with the first name "Robin," approximately 40 years old, wearing red clothing; and another black male, approximately 26 years old, also wearing black clothing.

Corporal Jason Yankalunas interviewed Ivey after responding to the scene. Corporal Yankalunas testified that when he arrived, Ivey was bleeding from his mouth and had some teeth missing. Ivey indicated that he had been hit several times in the face, but could not identify who had punched him. Corporal Yankalunas smelled alcohol on Ivey, but could not determine if he was intoxicated because of his mouth injuries. While he was interviewing Ivey, a second victim, David Lowe, stated that he had also been robbed.

Upon learning the descriptions of the suspects, Officer Milton Rodriguez went to the neighboring Baker Street area to begin the search. Initially, he did not locate anyone matching the descriptions, but when he "responded back," he identified the female suspect, later identified as Robin Capper, and one of the male suspects, later identified as appellant.[2] Officer Rodriguez stopped appellant and asked for some identification. From his front jacket pocket, appellant pulled out a Department of Corrections I.D. bearing appellant's name and several credit cards: a Taylor Bank Cashing Card, a PNC Bank Debit Card, and a Bank of America Gold Credit Card, all bearing the name Mike L. Ivey or Mike Ivey.

Appellant was detained and Lowe, because he did not appear to be injured, was taken to the Baker Street location for a show up to determine whether he could identify appellant as one of the suspects, which he did. Ivey never identified appellant. Subsequently, after interviewing Lowe more carefully, the officers learned that he was not a victim, but, in fact, a suspect in the case.

Around this time, Officer Jason Harrington went to a nearby convenience store, Royal Farms, to try to locate the suspects. Initially, Officer Harrington did not identify any-

---

**2.** Officer Rodriguez testified that he had seen appellant earlier in the morning and told him that he was hanging out at the wrong spot.

one, but when he went back to talk to management, he spoke with a clerk named Josh and gave him the description of the suspects. Josh replied that two men had come in and attempted to use the ATM, and that he had a surveillance videotape of the incident.

Officer Harrington and Detective Tanya Ehrisman viewed the tape and saw a white male and a taller black male enter the business. The black male in the tape was later identified as appellant, and the white male was later identified as Lowe. Officer Harrington testified that when viewing the tape he saw "[t]he black male immediately goes to his left which is where the ATM is located. The white male goes to the front counter. When the white man goes to the front counter he goes off camera a little bit, you can't see what he's doing." Josh told Officer Harrington that the white male had attempted to use a credit card to purchase cigarettes. On cross-examination, Officer Harrington said that he could not see from the videotape whether appellant actually used the ATM.

Ivey testified that he has lived in Ocean City, Maryland for the past 10 years. On October 11, 2003, at approximately 2:30 or 3:00 a.m., he left a bar in Ocean City and took a cab to Salisbury. He recalls someone else being inside the cab with him, and, although he could not specifically identify who it was, he believed that it was probably Lowe. Ivey fell asleep in the cab, but awoke when they arrived at the Thrift Travel Inn. Ivey paid for the room, signed himself in, and went to his room to sleep. He remembers a knock at the door, a white man, probably Lowe, opening it, and then a white woman and "two black guys came in and they robbed me." He explained that the men asked him for his money, and then pulled out a knife. At some point he was hit in the mouth and bleeding "pretty bad." Ivey testified that he was "scared and panicked."

Once the suspects took his wallet, they made Ivey take his clothes off. While they were searching the room for more money, Ivey ran into the next room, "grabbed the phone and said call the police, call the police." Thereafter, the suspects

"busted in and hit me and then they left." Ivey testified that he did not give anyone permission to use his credit cards. Moreover, he denied giving Robin Capper permission to be in his room or giving Lowe his credit cards to "try to get out some more money . . . [to] buy . . . crack cocaine."

Appellant was the final person to testify. He stated that he was living at 705 Baker Street with his girlfriend at the time. He had been released from prison just two weeks earlier and had a criminal record.

On the day of the incident, appellant was outside smoking a cigarette, waiting for his boss to pick him up. His friend, Tyrone Hunter, asked him to go to the Thrift Travel Inn with him because someone owed Hunter money. Appellant told Hunter that he did not want to get into any trouble. Hunter assured him that everything would be fine. When they got to the Inn, Hunter knocked on the door, and Capper answered. Appellant testified that Ivey, Lowe, and Capper were inside and he observed some crack pipes on the night stand. Appellant remembered Ivey stating, "we're getting ready to go to the store now to get some money." Appellant decided to go with Hunter and Lowe to Royal Farms so that he could get "something to eat to take to work." They went in the store and Lowe unsuccessfully attempted to use the ATM. Thereafter, appellant told Hunter, "I'm going back to the house."

Appellant returned to his waiting spot on Baker Street, when Hunter got a call from Capper. Hunter left, and then returned with some credit cards and asked appellant to "hold" them until he came back. Hunter explained that there was "something[ ] wrong at the hotel." Appellant testified that he did not see Ivey's wallet nor did he ever hit Ivey. Furthermore, he stated that he did not try to use the credit cards at Royal Farms and was only in possession of them because Hunter had asked him to hold them.

Appellant was charged with robbery; theft of less than $500; receiving a stolen credit card; and stealing a credit card. The jury returned a verdict of not guilty on the first count, and guilty on the remaining three. During sentencing,

the court asked the prosecutor, "What's your position as to merger?" She answered, and the defense counsel agreed, that the credit card offenses would merge, but that the theft of less than $500 was a separate offense and would not merge. The court merged the stealing a credit card conviction with the receiving a stolen credit card conviction and sentenced appellant to 18 months imprisonment. A consecutive 18 month term for the theft of less than $500 conviction was also imposed. Thereafter, appellant filed this timely appeal.

## DISCUSSION

Appellant contends that the circuit court erred by not merging all three of his convictions under either the required evidence test or the rule of lenity. The State counters that appellant's arguments are not preserved because appellant "took the opposite position at sentencing," and agreed to separate sentences. Therefore, the circuit court did not rule on the present issue. Nevertheless, Maryland Rule 4–345(a) states, "The court may correct an illegal sentence at any time."

In *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949 (1985), *abrogation recognized by Savoy v. State*, 336 Md. 355, 648 A.2d 683 (1994), the Court of Appeals explained, "when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court." "A sentence is 'illegal' within the contemplation of *Walczak* if it is beyond the statutory power of the court to impose." *Chilcoat v. State*, 155 Md.App. 394, 413 n. 4, 843 A.2d 240, *cert. denied*, 381 Md. 675, 851 A.2d 594 (2004) (citations omitted). More recently, the Court of Appeals in *Fisher v. State*, 367 Md. 218, 292–93, 786 A.2d 706 (2001) (citations omitted), stated that "an illegal sentence can, and should be addressed even if not preserved or properly raised." In fact, appellate courts should correct an illegal sentence on direct appeal, "if for no other reason than the avoidance of additional litigation in the

form of petitions for post conviction relief." *Id.* at 293, 786 A.2d 706.

## I. Required Evidence Test

Appellant contends that because his "convictions were based on the same act, the theft of the credit cards," that the conviction for theft should have merged into the conviction for receiving a stolen credit card, just as the conviction for stealing a credit card had merged into the conviction for receiving a stolen credit card. We agree.

■ The doctrine of merger arises in part from the Fifth Amendment Double Jeopardy Clause, which "prohibits both successive prosecutions for the same offense as well as multiple punishment for the offense." *Dixon v. State,* 364 Md. 209, 236, 772 A.2d 283 (2001) (footnote omitted) (citing *Newton v. State,* 280 Md. 260, 262–63, 373 A.2d 262 (1977)).

■ "Under Maryland common law principles, 'the normal standard for determining whether one offense merges into another is what is usually called "the required evidence test." ' " *McGrath v. State,* 356 Md. 20, 23, 736 A.2d 1067 (1999) (citations omitted). The test is also known as the "same evidence test," the "Blockburger test," or the "elements test." *Dixon,* 364 Md. at 237, 772 A.2d 283. This test "focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." *McGrath,* 356 Md. at 23, 736 A.2d 1067 (quoting *State v. Lancaster,* 332 Md. 385, 391–92, 631 A.2d 453 (1993)). Stated differently,

> If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, "there is no merger under the required evidence test even though both offense are based upon the same act or acts." " 'But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other,' " and where both

'offenses are based on the same act or acts, ... merger follows...."

*Id.* at 23–24, 736 A.2d 1067. (quoting *Lancaster*, 332 Md. at 391–92, 631 A.2d 453) (quoting *Williams v. State*, 323 Md. 312, 317–18, 593 A.2d 671 (1991); *Thomas v. State*, 277 Md. 257, 267, 353 A.2d 240 (1976)). "When there is a merger under the required evidence test, separate sentences are normally precluded. Instead, a sentence may be imposed only for the offense having the additional element or elements." *Id.* (quoting Lancaster, 332 Md. at 391–92, 631 A.2d 453).

■ The required evidence test equally applies to statutory and common law offenses. *Dixon*, 364 Md. at 237, 772 A.2d 283. Additionally, the test applies to multi-purpose offenses, *i.e.*, offenses having alternative elements.[3] "[A] court must 'examin[e] the alternative elements relevant to the case at issue.'" *McGrath*, 356 Md. at 23, 736 A.2d 1067 (quoting *Lancaster*, 332 Md. at 391–92, 631 A.2d 453) (quoting *Snowden v. State*, 321 Md. 612, 618, 583 A.2d 1056 (1991)).

Pursuant to Maryland Code (2002), § 8–204 of the Criminal Law Article ("CL"), appellant was charged and convicted of two credit card theft counts: stealing a credit card and receiving a stolen credit card. That section states in relevant portion:

(a) *Taking credit card from another; receiving credit card taken from another with intent to sell.*—(1)  A person may not:

(i) take a credit card from another, or from the possession, custody, or control of another without the consent of the cardholder; or

---

3.  "By use of the phrase 'alternative elements,' our cases do not mean that each alternative manner of committing the offense must be mutually exclusive. Instead, the phrase simply refers to an offense which, under the statutory language itself or the common law requirements, may be committed in two or more different ways, any one of which is sufficient for a conviction." *Lancaster*, 332 Md. at 392 n. 3, 631 A.2d 453 (citations omitted).

(ii) with knowledge that a credit card has been taken under the circumstances described in item (i) of this paragraph, receive the credit card with the intent to use it or sell or transfer it to another who is not the issuer or the cardholder.

(2) a person who violates this subsection is guilty of credit card theft.

\*      \*      \*

(e) *Penalty.*—A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 18 months or a fine not exceeding $500 or both.

■ The parties do not dispute, and the circuit court ordered, that the stealing a credit card conviction merges into the receiving a stolen credit card conviction. At issue is whether the conviction for theft of less than $500 pursuant to CL § 7–104 also merges into the receiving a stolen credit card conviction. CL § 7–104 states, in relevant portion:

(a) *Unauthorized control over property.*—A person may not willfully or knowingly obtain or exert unauthorized control over property, if the person:

(1) intends to deprive the owner of the property;

(2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

\*      \*      \*

(c) *Possessing stolen personal property.*—(1) A person may not possess stolen personal property knowing that it has been stolen, or believing that it probably has been stolen, if the person:

(i) intends to deprive the owner of the property;

(ii) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(iii) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

\* \* \*

(g) *Penalty.*—(1) A person convicted of theft of property or services with a value of $500 or more is guilty of a felony and:

(i) is subject to imprisonment not exceeding 15 years or a fine not exceeding $25,000 or both; and

(ii) shall restore the property taken to the owner or pay the owner the value of the property or services.

(2) Except as provided in paragraph (3) of this subsection,[4] a person convicted of theft of property or services with a value of less than $500, is guilty of a misdemeanor and:

(i) is subject to imprisonment not exceeding 18 months or a fine not exceeding $500 or both; and

(ii) shall restore the property taken to the owner or pay the owner the value of the property or services.

---

4.  Paragraphs 3 and 4 state:
    (3) Subject to paragraph (4) of this subsection, a person who has two or more prior convictions under this subtitle and who is convicted of theft of property or services with a value of less than $500 is guilty of a misdemeanor and:
       (i) is subject to imprisonment not exceeding 5 years or a fine not exceeding $5,000 or both; and
       (ii) shall restore the property taken to the owner or pay the owner the value of the property or services.
    (4) The court may not impose the penalties under paragraph (3) of this subsection unless the State's Attorney serves notice on the defendant or the defendant's counsel before the acceptance of a plea of guilty or nolo contendere or at least 15 days before trial that:
       (i) the State will seek the penalties under paragraph (3) of this subsection; and
       (ii) lists the alleged prior convictions.
    CL § 7–104.

318

Appellant contends that the convictions for receiving a stolen credit card and theft of less than $500 share all of the same elements, but that receiving a stolen credit card requires the "additional element that the stolen item must be a credit card." The State argues that, because "[t]heft has an element of value that the crime of credit card theft does not have," the two convictions cannot merge.

In *Proctor v. State*, 49 Md.App. 696, 435 A.2d 484 (1981), there was no dispute over the fact that the stolen property had some value. The Court considered whether value is an element that must be proven under the consolidated theft statute, and concluded that the statute "does not include among its elements a showing of value." [5] *Id.* at 704, 435 A.2d 484. "The issue of value becomes relevant only with respect to the imposition of a penalty." *Id.* It is clear, however, that to be convicted of theft, the State must prove that the property taken has some value. *Jupiter v. State*, 328 Md. 635, 640, 616 A.2d 412 (1992); *Stackowitz v. State*, 68 Md.App. 368, 373, 511 A.2d 1105 (1986). Indeed, the General Assembly defined the word "property" to mean "anything of value." CL § 7–101(h).

The circumstances of the theft here showed that the victim was carrying several credit cards in his wallet at the time of the theft, which implies that the cards were usable at that time and supports a reasonable inference that the cards were in fact valid and subject to use as credit cards when they were taken. [6]

The State directs us to *Hagans v. State*, 316 Md. 429, 559 A.2d 792 (1989), and *Ford v. State*, 330 Md. 682, 625 A.2d 984 (1993), *superseded by statute on other grounds as stated in*

___

**5.** In that case, we considered the statute when it was codified at Maryland Code (1957, 1976 Repl.Vol., 1980 Cum.Supp.), Art. 27, § 342. The General Theft Provisions Statute was "derived without substantive change from former Art. 27 § 342" in 2002, when it was codified at Maryland Code (2002), § 7–104 of the Criminal Law Article.

**6.** The issue of whether the stolen cards were expired or revoked and thus could actually be used to obtain credit is not before us.

*Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999), to support its contention that value is a required element of theft. *Hagans* and *Ford* stand for the proposition that the value of the stolen property must be set forth in the charging document because the amount stolen determines whether the defendant is being accused of a misdemeanor or a felony.

CL § 7–108 sets forth an approved form of charging document for the offense of theft; it is sufficient if it substantially states: "(name of defendant) on (date) in (county) stole (property or services stolen) of (name of victim), having a value of (less than $500, or $500 or more) in violation of § 7–104 of the Criminal Law Article, against the peace, government, and dignity of the State." The cases do not state, however, that the amount of value of the property is an element of the crime, but the fact of at least some minimal value most definitely is. *See Stackowitz*, 68 Md.App. at 373, 511 A.2d 1105. Moreover, the General Assembly has provided that, "[w]hen it cannot be determined whether the value of the property or service is more or less than $500 under the standards of this section, the value is deemed to be less than $500." CL § 7–103. Thus, the General Assembly considered that the exact value of the property may not always be able to be proven but that should not preclude a conviction of theft. *See also Spitzinger v. State*, 340 Md. 114, 665 A.2d 685 (1995); *Johnson v. State*, 90 Md.App. 638, 602 A.2d 255 (1992).

We are persuaded that the convictions should have merged under the required evidence test. The crimes of receiving a stolen credit card and theft of less than $500 share the elements of knowledge, possession of stolen property, and intention to use the property or to deprive the owner of its use. Receiving a stolen credit card requires one additional element of proof—that the item stolen was a credit card. Therefore, appellant's conviction for theft of less than $500 should have merged into his conviction for receiving a stolen credit card.

## II. Rule of Lenity

The rule of lenity applies where both offenses are statutory in nature. *Monoker v. State*, 321 Md. 214, 223, 582

A.2d 525 (1990). Under the rule of lenity, in the area of double punishments, doubts are to be resolved in favor of the defendant in order to avoid double jeopardy problems. It has also been held that lenity in determining the ambit of ambiguous criminal statutes is particularly appropriate where legislative history of a statute or the relationship between two statutory provisions is not clear.

Judge Cole, on behalf of the Court in *Monoker v. State,* explained the operation of the rule of lenity succinctly:

> Even though two offenses do not merge under the required evidence test, there are nevertheless times when the offenses will not be punished separately. Two crimes created by legislative enactment may not be punished separately if the legislature intended the offenses to be punished by one sentence.... [I]f we are unsure of the legislative intent in punishing offenses as a single merged crime or as distinct offenses, we in effect, give the defendant the benefit of the doubt and hold that the crimes do merge.

*Id.* at 222, 582 A.2d 525 (citations omitted). Yet it is clear that the rule cannot be invoked to override a clear legislative directive to the contrary.

Whether the defendant is challenging multiple indictments, multiple convictions, or multiple sentences, the unit of prosecution reflected in the statute controls whether multiple sentences ultimately may be imposed. "[A]mbiguous units of prosecution ..., pursuant to the rule of lenity, must normally be construed in favor of the defendant," effectively merging the offenses. *Melton v. State,* 379 Md. 471, 488, 842 A.2d 743 (2004). *See also Randall Book Corp. v. State,* 316 Md. 315, 327, 558 A.2d 715 (1989).

Double jeopardy is not violated if the legislature has authorized multiple punishments for the same act. When, as here, the legislature has not expressly authorized multiple punishments for the same act, the court applies the "same elements" test of *Blockburger.* But where there is no legislative history to assist the courts in making their interpretation, the rule of lenity applies. Unlike the required evidence test,

in which the lesser included offense merges into the greater offense, under the rule of lenity, "When 'there is merger under the rule of lenity, the offense carrying the lesser maximum penalty ordinarily merges into the offense carrying the greater maximum penalty.'" *McGrath,* 356 Md. at 25, 736 A.2d 1067 (quoting *Miles v. State,* 349 Md. 215, 229, 707 A.2d 841 (1998)).

There is nothing in the legislative file that indicates that the General Assembly intended for dual convictions. There is no suggestion in either of the statutory provisions or legislative history or prior court opinions, that one of the purposes in establishing the offense of credit card theft was to compound the punishment for theft. Rather, it would appear reasonable that the credit card theft offenses were enacted to ensure that a credit card thief, who has possession of the physical credit card but has not used it for some reason or another, can still be prosecuted for theft, even though the physical card itself has very little intrinsic value. "[T]he rule of lenity instructs that a court 'not interpret a . . . criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended.'" *Melgar v. State,* 355 Md. 339, 347, 734 A.2d 712 (1999) (citations omitted). Moreover, the General Assembly typically makes clear when it intends to allow dual convictions or consecutive sentences, and no such direction is present here.

**SENTENCES VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR A NEW SENTENCING PROCEEDING NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY WICOMICO COUNTY.**