18 A.3d 981

**Laura Jean MOORE**

v.

**STATE of Maryland.**

**No. 1151, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

May 2, 2011.

656

658

660

662

W. Bradley Ney (Lynn M. Deavers, Dow Lohmes PLLC, on the brief), Washington, D.C., for appellant.

Jessica V. Carter (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: *HOLLANDER, WOODWARD, JUDITH C. ENSOR (Specially Assigned), JJ.

WOODWARD, J.

On May 2, 2008, a jury in the Circuit Court for Frederick County convicted appellant, Laura Jean Moore[1], of 37 criminal offenses relating to the possession and issuance of counterfeit United States currency, theft, forgery, uttering, and making a false statement to a police officer. The court sentenced appellant to a total of 40 years' incarceration, with all but 15 years suspended. On appeal, appellant presents five questions for our review,[2] which we have condensed into three questions:

I. Were appellant's convictions for possessing counterfeit currency, issuing counterfeit currency, uttering, and theft multiplicitous?

II. Was there sufficient evidence to support appellant's convictions for offenses arising out of the incidents at Super Fresh (Counts 10, 11, and 12), Rite Aid (Counts 13, 14, and 15), Frederick County Sheriff's Office

---

* Ellen L. Hollander, J., participated in the hearing and conference of this case while an active member of this Court, but she resigned from the Court of Special Appeals prior to the filing of the actual opinion.

1. At trial, appellant identified herself as Laura Paolino–Moore.

2. Appellant does not challenge in this appeal her convictions or sentences in 13 of the 37 counts. *See* the chart at the end of the Background section of this opinion.

(Counts 35 and 74), and Brunswick City Police Department (Count 42)?

III. Should this Court remand for re-sentencing?

For the reasons set forth herein, we shall vacate appellant's convictions and sentences on Counts 6, 7, 32, 33, and 37, vacate only the sentences on Counts 3, 29, 66, and 69, and affirm the balance of the judgments.

## BACKGROUND

The instant case arises from a series of incidents that occurred in Frederick County, Maryland between August and October 2006 regarding appellant's involvement with counterfeit currency and forged instruments. Appellant was charged in a 75–count criminal information, but prior to trial, the State entered a *nolle prosequi* to 37 of the 75 counts. The case went to trial on the remaining 38 counts. The following facts relevant to the instant appeal were developed in the State's case in chief.

### Family Dollar—August 20, 2006

On August 20, 2006, then Chief of Police Donald Rough of the Brunswick City Police Department responded to a call that suspected counterfeit currency was passed at a Family Dollar store in Brunswick, Maryland. Upon arriving at Family Dollar, Chief Rough interviewed Tanya Flabbi, the cashier who received the suspect currency. Chief Rough recovered two $20 bills and recorded a description of the individual who presented the currency in the transaction. Chief Rough later gave the suspect bills to another officer of the Brunswick City Police Department, who secured the evidence in preparation for submission to the United States Secret Service.

At trial, Flabbi identified appellant as the individual who presented currency that "felt very smooth" and was "dark in color." Flabbi testified that she tested the bills with a counterfeit pen, alerted her manager, and provided a description of appellant to the police.

*Rite Aid and Super Fresh—August 24, 2006*

**1.**

Four days later on August 24, 2006, Officer Chris Stafford of the Brunswick City Police Department responded to a call that possible counterfeit currency was passed at a Rite Aid store in a Brunswick shopping center. Officer Stafford spoke with Roxanne Bannon, the cashier involved in the transaction, and Patsy Howell, the shift supervisor. Officer Stafford recovered a $20 counterfeit bill and secured the evidence for the Secret Service.

Bannon testified that a woman who was acting "odd" paid for a pack of cigarettes with a "strange" $20 bill. After the transaction, Bannon notified Howell, her supervisor. Howell called the police and Bannon provided a physical description of the suspect. Bannon recalled that the individual who presented the currency was "about five four-ish, had her hair pinned back," which was "curly, brown, brownish-red." Bannon, however, was unable to identify appellant at trial as the woman who presented the counterfeit currency.

Howell testified that the currency to which Bannon alerted her "was not a normal $20 bill." Howell stated that "the bill seemed a little thicker ..., [and] the ink on it was dark." Although Howell did not see the individual who presented the $20 bill to Bannon, she testified that appellant came into the Rite Aid store several months later, identified herself as "Laura Moore," and "asked to speak to the cashier who had I.D.'d her." According to Howell, appellant stated that she was "being accused of passing a counterfeit $20 bill" and that the police had searched her house.

**2.**

After leaving the Rite Aid store, on August 24, 2006, Officer Stafford encountered Rosemary Abrecht, a cashier at a Super Fresh supermarket located in the same shopping center. Abrecht and another Super Fresh employee told Officer Stafford that they also had received a suspicious $20 bill during a transaction that day. Officer Stafford took possession of the

currency and observed that it bore the same serial number as the bill that he had just received from Rite Aid. The currency recovered from Abrecht was also secured for presentation to the Secret Service.

At trial, Abrecht recounted that, as she was closing her check out lane, she noticed that she had received some "fake money" that she knew "wasn't real" after holding it in her hand. According to Abrecht, the money "felt real smooth to the touch, like a different texture of paper." She could not remember, however, who gave her the suspect currency. Abrecht testified that, while she was outside with some co-workers during a break, she noticed Officer Stafford walk by them. Abrecht called Officer Stafford over and handed him the bill.

Abrecht then recalled that appellant returned later to Super Fresh to discuss counterfeit money. Abrecht stated that she followed appellant out of the store and "told [appellant] I really didn't think she was the one that did it." Abrecht testified that, "[w]hen this happened I tried to go back in mind and think who gave me all these twenties. Um, [appellant]'s not the person that I had in mind."

### Magic Mo's—August 25, 2006

The next day, August 25, 2006, appellant went to purchase gas from Magic Mo's gas station and convenience store in Frederick, Maryland. When appellant attempted to pay for gas with a $20 bill, Mohammed Mohiuddin, the owner of Magic Mo's, tested the bill with a counterfeit pen and informed appellant that it was counterfeit. After appellant gave him a genuine $20 bill in exchange for the counterfeit bill, Mohiuddin told her that he still wanted to call the police.

Officer Melissa Zapato of the Frederick Police Department responded to the report of counterfeit currency being present-ed at Magic Mo's. Upon arriving at the scene, Officer Zapato was greeted by appellant. Mohiuddin then approached Officer Zapato, advised her that appellant had attempted to pay with what he believed to be a counterfeit $20 bill, and gave the

counterfeit bill to Officer Zapato. Officer Zapato interviewed appellant, and appellant was completely surprised and taken aback by the questioning. During the interview, appellant voluntarily looked through her wallet, in which Officer Zapato found another $20 bill with the same serial number as the $20 bill given to Officer Zapato by Mohiuddin. Officer Zapato took the two counterfeit $20 bills back to the station, but did not arrest appellant.

### Family Dollar and Brunswick City Police Department—August 27, 2006

On August 27, 2006, at the same Family Dollar store in Brunswick, appellant gave the cashier one counterfeit $100 bill to pay for a purchase. The cashier called the police, and Deputy Rick Matthews of the Brunswick City Police Department responded. Appellant was present at the store when Deputy Matthews arrived. After recovering from the store cashier a $100 bill that tested positive as counterfeit by a detection pen, Deputy Matthews spoke with appellant and took her picture, but did not arrest her. Later that afternoon, appellant went to the Brunswick City Police Department to meet with Deputy Matthews. During that meeting, appellant gave Deputy Matthews what she suspected was a counterfeit $20 bill. Appellant told Deputy Matthews that she believed that she obtained the currency while shopping at either the Rite Aid or Super Fresh.

### M & T Bank—September 6, 2006

On September 6, 2006, appellant attempted to pass two forged checks at the M & T Bank in Frederick in exchange for cash or credit on her overdrawn account. Because appellant's account was overdrawn at that time, the bank refused to cash the checks and contacted the issuer, First Rehabilitation Resources, Inc., to verify the checks' authenticity. Upon learning that the checks were not authentic, the bank contacted its security department, which in turn contacted the police.

### *Frederick County Sheriff's Office—September 23, 2006*

On September 23, 2006, appellant visited the Frederick County Sheriff's office and met with Sergeant Eric Byers. Appellant entered the office and asked to speak with Sergeant Byers regarding the incidents involving counterfeit currency. Specifically, appellant admitted that she had used a $20 counterfeit bill at Magic Mo's on August 25, 2006, and paid with a $100 counterfeit bill at a Family Dollar store on August 27, 2006. Appellant also provided Sergeant Byers with eight counterfeit bills, which bore two serial numbers. According to Sergeant Byers, appellant stated that her aunt sent greeting cards, which contained the counterfeit bills, to appellant's grandchildren. Sergeant Byers recalled that the counterfeit nature of the bills was apparent due to the stiffness and thickness of the paper on which they were printed.

Appellant also discussed with Sergeant Byers what appellant described as two "bad checks" that she tried to negotiate at the M & T Bank in Frederick on September 6, 2006. Appellant told Sergeant Byers that she had received the checks drawn on First Rehabilitation Resources, Inc. payable to her bearing the name of Dr. Ackerman on the memo line. According to Sergeant Byers, appellant said that Dr. Ackerman was her doctor and that he would send her money to pay for visits to other referral doctors. As a result of this conversation, Sergeant Byers researched First Rehabilitation and found that it had nothing to do with medical services.

At trial, Sergeant Byers described appellant's behavior during the meeting as "too friendly," which "aroused some of [his] ... suspicion." Sergeant Byers testified that appellant wore a "very low cut top" and "leaned down exposing her chest at several times." Sergeant Byers found appellant's conduct to be manipulative. According to Sergeant Byers, appellant stated that "she felt that I was her friend and that she trusted me and wanted to provide me with the information." Upon asking why appellant came in to speak with him, appellant responded that she was innocent. When Sergeant Byers advised appellant that they did not share a personal relationship

and that any information she provided could be used against her, "her demeanor changed ... [and] [s]he became a little more professional ... and more closed or drawn back."

### *Famous Pawnbrokers—October 17, 2006*

On October 17, 2006, appellant visited Famous Pawnbrokers in Frederick, Maryland. Justin Harris, a cashier at Famous Pawnbrokers, received five $20 bills from appellant as part of a transaction. He "counted it real quick," put the cash in a drawer, and did not notice any counterfeit bills in that money. When his manager, Joni Reed, came to finish the transaction, appellant gave Reed more bills, and Reed "noticed that it was fake money." Reed, however, did not know that Harris had already received some money from appellant.

Reed testified at trial that, when appellant, who was a "longstanding customer" with Famous Pawnbrokers, handed the additional $20 bills to Reed, she "could tell that some of [th]em didn't look right" and, after testing the bills with a counterfeit pen, she found that three of the bills were counterfeit. Reed handed the counterfeit bills back to appellant, and appellant gave her "real ones in their place."

After appellant left the store, Reed discovered that two of the $20 bills from appellant's transaction with Harris were counterfeit. After finding the two counterfeit bills in Harris' drawer, Reed called her supervisor, who told her to call the police. Reed called the police, and when Officer Scott Shepardson came to Famous Pawnbrokers the next day, she gave him the counterfeit bills.

Special Agent Matt Reisenweber of the United States Secret Service, who was contacted by the Brunswick City Police Department, testified that all of the bills he examined in relation to appellant's case did not contain all of the security features found in United States currency and therefore were counterfeit.

At the close of the State's case, appellant moved for judgment of acquittal as to each count. After extensive argument by defense counsel and the prosecutor, the trial court denied

appellant's motion as to all counts except Count 75. The court granted the motion for judgment of acquittal as to Count 75.

Appellant then took the stand and testified in her own defense. Appellant stated that she did not notice anything unusual about the money she presented at Family Dollar on August 20, 2006, and did not know she had counterfeit money on her that day. Appellant did not remember shopping at the Super Fresh on August 24, 2006, and stated that she was at a courthouse in Greenbelt on that day. Appellant testified that she never paid for anything at Super Fresh or Rite Aid with counterfeit currency and never had any of her transactions challenged there. According to appellant, she met with Deputy Matthews at the Brunswick City Police Department on August 27, 2006, to give him a counterfeit bill that she had no intention of spending.

Appellant also testified that she decided to speak with Sergeant Byers on September 23, 2006, at the Frederick County Sheriff's Office, because she knew him through past incidents involving her daughter. Appellant's intention was to provide Sergeant Byers with eight counterfeit bills that she received in the mail from her sister. Regarding the two checks from First Rehabilitation Resources, Inc., appellant testified that her insurance company occasionally provided her with checks to pay doctors. Appellant stated, however, that she never had been treated by Dr. Ackerman, nor did she tell Sergeant Byers that she knew Dr. Ackerman. Appellant testified that she received these checks unexpectedly in the mail and called First Rehabilitation Resources, Inc. to inquire about the checks because she did not recognize Dr. Ackerman's name. Nevertheless, she said that she then unsuccessfully attempted to deposit the checks into her account at M & T Bank.

At the close of all of the evidence, defense counsel did not renew his motion for judgment of acquittal. Thereafter, while the trial court was instructing the jury on general principles of the law, the tape machine that was recording the jury instructions malfunctioned. During the pause in the proceedings,

defense counsel approached the bench, and the trial judge told defense counsel that he could renew his motion for judgment of acquittal as to all of the counts included in his previous motion at the end of the State's case. Defense counsel, however, stated that he was renewing his motion as to only the possession of counterfeit United States currency (Count 10), the issuance of counterfeit United States currency (Count 11), and theft under $100 (Count 12), which were all related to the August 24, 2006 Super Fresh incident. The court denied appellant's motion.

The jury found appellant guilty of all 37 counts submitted to it. The trial court imposed the following sentences: [3]

| COUNT | DATE | CRIME | SENTENCE |
|---|---|---|---|
| | | *Family Dollar*—Counts 3, 4, 6, 7, & 8 | |
| 3 | 8/20/06 | Poss. Counterfeit (244B) | 3 years |
| 4 | 8/20/06 | Issue Counterfeit (244B) | 3 years concurrent |
| 6 | 8/20/06 | Poss. Counterfeit (9094B) | No sentence |
| 7 | 8/20/06 | Issue Counterfeit (9094B) | No sentence |
| 8 * | 8/20/06 | Theft Under $100 | No sentence |
| | | *Super Fresh*—Counts 10, 11, & 12 | |
| 10 | 8/24/06 | Poss. Counterfeit (8089D) | No sentence |
| 11 | 8/24/06 | Issue Counterfeit (8089D) | No sentence |
| 12 | 8/24/06 | Theft Under $100 | No sentence |
| | | *Rite Aid*—Counts 13, 14, & 15 | |
| 13 | 8/24/06 | Poss. Counterfeit (8089D) | No sentence |
| 14 | 8/24/06 | Issue Counterfeit (8089D) | No sentence |
| 15 | 8/24/06 | Theft Under $100 | No sentence |
| | | *Family Dollar*—Counts 20, 21, & 22 | |
| 20 | 8/27/06 | Poss. Counterfeit (7330A) | No sentence |
| 21 | 8/27/06 | Issue Counterfeit (7330A) | No sentence |
| 22 * | 8/27/06 | Attempted Theft Under $500 | No sentence |

\* Asterisked counts are not challenged in the instant appeal.

| COUNT | DATE | CRIME | SENTENCE |
|---|---|---|---|
| | | *Famous Pawnbrokers*—Counts 29, 30, 32, & 33 | |

3. The chart of appellant's sentences has been provided for ease of presentation. The listing under the possession and issuing counterfeit currency crimes is the serial number on each bill.

| 29 | 10/17/06 | Poss. Counterfeit (5251C) | 3 years consecutive to Count 3 |
|---|---|---|---|
| 30 * | 10/17/06 | Issue Counterfeit (5251C) | 3 years concurrent |
| 32 | 10/17/06 | Poss. Counterfeit (8286A) | 3 years concurrent |
| 33 | 10/17/06 | Issue Counterfeit (8286A) | 3 years concurrent |
| *Frederick Sheriff*—Counts 35, 37, & 74 | | | |
| 35 | 9/23/06 | Poss. Counterfeit (6446D) | 3 years consecutive to Counts 3 and 29 |
| 37 | 9/23/06 | Poss. Counterfeit (1139B) | 3 years concurrent |
| 74 | 9/23/06 | False Statement to Police Officer | No sentence |
| *Magic Mo's*—Counts 38, 39, & 40 | | | |
| 38 | 8/25/06 | Poss. Counterfeit (8089D) | No sentence |
| 39 | 8/25/06 | Issue Counterfeit (8089D) | No sentence |
| 40 * | 8/25/06 | Attempted Theft Under $100 | No sentence |
| *Brunswick PD*—Count 42 | | | |
| 42 | 8/27/06 | Poss. Counterfeit (7553) | 3 years consecutive to Counts 3, 29, and 35 |

* Asterisked counts are not challenged in the instant appeal.

| COUNT | DATE | CRIME | SENTENCE |
|---|---|---|---|
| *Appellant's Home*—Counts 44, 64, 72, & 73 | | | |
| 44 * | 10/20/06 | Poss. Counterfeit (4715A) | 3 years consecutive to Counts 3, 29,35, and 42 |
| 64 * | 10/20/06 | Forgery Money Order # 24055 | 10 years consecutive suspended |
| 72 * | 10/20/06 | Poss. Image of U.S. Currency | 10 years consecutive suspended |
| 73 * | 10/20/06 | Possess Image of U.S. Currency | 10 years concurrent |
| *Famous Pawnbrokers*—Counts 47 & 48 | | | |
| 47 * | 8/30/06 | Forgery Money Order # 24055 | 10 years consecutive suspended |
| 48 * | 8/30/06 | Uttering Money Order # 24055 | 10 years consecutive suspended |
| *M & T Bank*—Counts 65, 66, 67, 68, 69, & 70 | | | |
| 65 * | 9/6/06 | Forgery Check # 9830 | 10 years concurrent |
| 66 | 9/6/06 | Uttering Check # 9830 | 10 years concurrent |

| 67 * | 9/6/06 | Attempted Theft $500 or More from First Rehabilitation | 15 years concurrent |
|---|---|---|---|
| 68 * | 9/6/06 | Forgery Check # 9834 | 10 years concurrent |
| 69 | 9/6/06 | Uttering Check # 9834 | 10 years concurrent |
| 70 | 9/6/06 | Attempted Theft $500 or More from First Rehabilitation | Merged with Count 67 |

* Asterisked counts are not challenged in the instant appeal.

This timely appeal followed. Additional facts will be set forth as needed to resolve the questions presented.

## DISCUSSION

### I.

### WERE APPELLANT'S CONVICTIONS FOR POSSESSING COUNTERFEIT CURRENCY, ISSUING COUNTERFEIT CURRENCY, UTTERING, AND THEFT MULTIPLICITOUS?

Appellant was found guilty of separate violations of possessing and then issuing the same counterfeit United States currency under Maryland Code (2002), § 8–604.1(a) of the Criminal Law Article ("C.L."), which states that "[a] person may not knowingly possess, with unlawful intent, or issue counterfeit United States currency." Specifically, appellant was found guilty of possessing and issuing two different counterfeit bills from the August 20, 2006 Family Dollar transaction (Counts 3, 4, 6, and 7), possessing and issuing one counterfeit bill from the August 24, 2006 Super Fresh transaction (Counts 10 and 11), possessing and issuing one counterfeit bill from the August 24, 2006 Rite Aid transaction (Counts 13 and 14), possessing and issuing one counterfeit bill from the August 27, 2006 Family Dollar transaction (Counts 20 and 21), possessing and issuing two counterfeit bills from the October 17, 2006 Famous Pawnbrokers transaction (Counts 29, 30, 32, and 33), and possessing and issuing one counterfeit bill from the August 25, 2006 Magic Mo's transaction (Counts 38 and

39). With the exception of the October 17, 2006 Famous Pawnbrokers transaction, appellant was also convicted of theft or attempted theft arising out of each of these transactions: August 20, 2006 Family Dollar (Count 8, theft under $100); August 24, 2006 Super Fresh (Count 12, theft under $100); August 24, 2006 Rite Aid (Count 15, theft under $100); August 27, 2006 Family Dollar (Count 22, attempted theft under $500); and August 25, 2006 Magic Mo's (Count 40, attempted theft under $100).

Appellant was convicted of uttering two forged checks drawn on First Rehabilitation Resources, Inc. at the M & T Bank on September 6, 2006 (Counts 66 and 69). Appellant was also convicted of attempted theft of $500 or more arising out of the same incident (Count 67).

 Appellant challenges these convictions [4] on a number of grounds: 1) that C.L. § 8–604.1 creates only one single offense for both the possession and issuance of counterfeit currency, as opposed to two separate crimes; 2) that the proper unit of prosecution for C.L. § 8–604.1 is the transaction as opposed to the individual bills; and 3) that her convictions for issuing counterfeit currency and uttering forged checks, along with her convictions for theft, violate double jeopardy principles. We shall examine each argument in turn.[5]

---

4. Appellant does not challenge her convictions or sentences for Count 8, theft under $100 (August 20, 2006 Family Dollar); Count 22, attempted theft under $500 (August 27, 2006 Family Dollar); Count 30, issuing $20 counterfeit bill No. 5251C (October 17, 2006 Famous Pawnbrokers); and Count 40, attempted theft under $100 (October 25, 2006 Magic Mo's). As we shall see *infra,* appellant seeks to merge into these convictions some or all of her other convictions arising out of the same transaction.

5. Appellant also appears to argue that the criminal information was defective for improperly charging her with multiple violations of one criminal offense, to wit, possessing counterfeit currency, issuing counterfeit currency, and theft. The State responds that, because appellant did not file a mandatory pre-trial motion in accordance with Maryland Rule 4–252(a)(2) and (b), she waived her challenge to any alleged improper charging document. We agree with the State and hold that

## Multiple Convictions for Possessing Counterfeit Currency and Issuing the Same Under C.L. § 8–604.1

■ Appellant argues that her convictions of possessing and issuing counterfeit United States currency were improper. Specifically, appellant maintains that she was wrongfully convicted of multiple violations of a statute that "merely provides for a single offense that can be proven in alternative ways." In other words, with respect to each of eight counterfeit bills, appellant was convicted of two violations of C.L. § 8–604.1, to wit, possessing and issuing counterfeit United States currency.[6] According to appellant, the text of C.L. § 8–604.1 reveals that the General Assembly did not intend to permit separate convictions for the possessing of counterfeit currency and the issuing of the same currency in one incident.

Relying on the Court of Appeals' opinion in *Biggus v. State*, 323 Md. 339, 593 A.2d 1060 (1991), appellant argues that her

appellant's multiplicity argument regarding the charging document has not been preserved for appellate review.

When the State charges multiple counts for a single offense, the charging document is multiplicitous. *Brown v. State*, 311 Md. 426, 432 n. 5, 535 A.2d 485 (1988) (stating that "[m]ultiplicity is the charging of the same offense in more than one count"). Relying on Rule 4–252, the Court of Appeals has stated that "[o]bjections based on defects in the indictment, other than that the indictment failed to show jurisdiction of the court or to charge an offense, must be raised by motion before trial, or the objections are waived." *Robinson v. State*, 353 Md. 683, 703, 728 A.2d 698 (1999). Because appellant in the instant case did not file a mandatory motion in accordance with Rule 4–252, her multiplicity argument in reference to the charging document is deemed waived. *See also Ford v. State*, 90 Md.App. 673, 694, 603 A.2d 883 (1992), *aff'd*, 330 Md. 682, 625 A.2d 984 (1993) ("Defects in an indictment, other than jurisdictional defects, are waived unless raised pursuant to Rule 4– 252(a)."). Appellant, however, may challenge her *convictions* on multiplicity grounds. *See Brown*, 311 Md. at 432, 535 A.2d 485 (stating that "[w]hether a particular course of conduct constitutes one or more violations of a single statutory offense affects an accused in three distinct, albeit related ways: multiplicity in the indictment or information, multiple convictions for the same offense, and multiple sentences for the same offense.").

**6.** Appellant was convicted of possessing counterfeit currency in Counts 3, 6, 10, 13, 20, 29, 32, and 38, and was convicted of issuing the same currency in Counts 4, 7, 11, 14, 30, 33, and 39.

separate convictions for possessing counterfeit currency and issuing the same under C.L. § 8–604.1(a) were illegal. Appellant maintains that, like the sexual offense statute at issue in *Biggus*, C.L. § 8–604.1 creates a single offense, which can be proven in two alternative ways, namely possessing *or* issuing counterfeit currency. Thus, according to appellant, this Court must vacate her convictions for the possession of counterfeit currency.

The State responds that *Biggus* is inapposite, because unlike the sexual offense statute, C.L. § 8–604.1 "clearly criminalizes two separate acts: possession of counterfeit currency and issuing counterfeit currency." According to the State, the fact that both crimes were committed in each transaction does not preclude multiple prosecution and punishment. The State contends instead that appellant's convictions on these counts merge into one sentence under the rule of lenity.

We agree with the State that C.L. § 8–604.1 does not create a single offense that can be committed in two different ways; rather, C.L. § 8–604.1 criminalizes the distinct acts of possessing counterfeit currency and issuing counterfeit currency. In *Biggus*, the Court of Appeals was required to interpret former Maryland Code (1957, 1987 Repl.Vol., 1990 Cum.Supp.), Art. 27, § 464B, which created the crime of "third degree sexual offense." 323 Md. at 343, 593 A.2d 1060. That statute read in relevant part:

§ 464B Third degree sexual offense.

(a) *What Constitutes.*—A person is guilty of a sexual offense in the third degree if the person engages in sexual contact:

(1) With another person against the will and without the consent of the other person, and:

(i) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(ii) Inflicts suffocation, strangulation, disfigurement or serious physical injury upon the other person or upon anyone else in the course of committing that offense; or

(iii) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

(iv) Commits the offense aided and abetted by one or more other persons; or

(2) With another person who is mentally defective, mentally incapacitated, or physically helpless, and the person knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless; or

(3) With another person who is under 14 years of age and the person performing the sexual contact is four or more years older than the victim.

Art. 27, § 464B(a).

The defendant in *Biggus* was charged with, among other things, two separate violations of § 464B—the engaging in sexual contact against the will and without the consent of another "by employing and displaying a dangerous and deadly weapon" in violation of § 464B(a)(1)(i), and the engaging in sexual contact with "a child under the age of fourteen (14) years, the defendant performing the contact [being] four (4) or more years older than the victim" in violation of § 464B(a)(3). 323 Md. at 344, 593 A.2d 1060. Both charges arose from one incident on February 7, 1987. *Id.* After the jury found the defendant guilty of the two third degree sexual offense counts, *id.* at 345, 593 A.2d 1060, the trial court imposed two consecutive ten year sentences for the violations of § 464B. *Id.* at 343, 593 A.2d 1060.

On appeal, the Court of Appeals considered "whether the General Assembly in Art. 27, § 464B, intended to create a single offense which can be committed in different ways or, instead, intended to create several distinct offenses." *Id.* In determining that the statute fell in the former category, the Court noted, among other things, that the language of the statute appeared on its face to create a single offense. *Id.* at 347, 593 A.2d 1060. Specifically, the Court observed that

§ 464B detailed six different ways in which the sexual contact was unlawful, and specified that an individual was "guilty of *a* sexual offense in the third degree" if he or she engaged in any one of the proscribed ways. *Id.* (emphasis in original). According to the Court, the fact that the six paragraphs of § 464B were separated by the word "or" "clearly indicat[ed] alternative ways in which the single offense c[ould] be committed." *Id.*

Our analysis of the language of C.L. § 8–604.1 in light of *Biggus* reveals that C.L. § 8–604.1 criminalizes two separate acts: possessing counterfeit currency and issuing counterfeit currency. C.L. § 8–604.1 reads as follows:

**§ 8–604.1. Possessing or issuing counterfeit United States currency.**

(a) *Prohibited.*—A person may not knowingly possess, with unlawful intent, or issue counterfeit United States currency.

(b) *Penalty.*—A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $1,000 or both.

Article 27, § 464B was given the title "Third degree sexual offense," which demonstrates its singular nature, while the title of C.L. § 8–604.1 ("Possessing or issuing counterfeit United States currency") reveals that the legislature sought to ban two distinct acts, to wit, the possession and issuance of counterfeit currency. This conclusion is bolstered by the explicit language of each statute. Unlike Art. 27, § 464B, which specifies that "[a] person is guilty of *a* sexual offense in the third degree" when he or she engages in any one of six different proscribed ways, C.L. § 8–604.1 simply prohibits two different acts. (Emphasis added). In other words, whereas Art. 27, § 464B identifies a single offense and then describes the multiple ways it can be committed, C.L. § 8–604.1 specifies two types of discrete behavior that are prohibited. There is also a different function for the word "or" in each statute. In Art. 27, § 464B, "or" is employed to specify the various

ways in which a third degree sexual offense can be committed. In C.L. § 8–604.1(a), however, "or" is used to distinguish two separate acts: the possession of counterfeit currency and the issuance of counterfeit currency.

Appellant, nevertheless, contends that the language of C.L. § 8–604.1(b), which imposes a penalty of incarceration not exceeding three years, a fine not exceeding $1,000 or both for "[a] person who violates *this section,*" evidences an intent to create a single offense for possessing and issuing counterfeit currency. (Emphasis added). The penalty provision, however, does not compel this Court to reach a different conclusion. In our view, the language of C.L. § 8–604.1(b) only exhibits the General Assembly's belief that the acts of possessing or issuing counterfeit currency were worthy of equal criminal punishment. Therefore, we hold that C.L. § 8–604.1 authorizes two separate offenses for the possession and issuance of counterfeit United States currency, as opposed to creating a single offense for both.

## Unit of Prosecution

Appellant claims that her convictions for possessing and issuing counterfeit currency based on bills with different serial numbers arising from the same transaction were multiplicitous. According to appellant, the language of C.L. § 8–604.1, along with "analogs in Maryland law and federal law support finding a single unit of prosecution in each transaction, as opposed to each serial number or bill possessed." Appellant thus concludes that her convictions for possessing and issuing a second counterfeit bill during the August 20, 2006 Family Dollar incident (Counts 6 and 7) and the October 17, 2006 Famous Pawnbrokers incident (Counts 32 and 33), and possessing a second counterfeit bill during the September 23, 2006 incident at the Frederick County Sheriff's Office (Count 37), should be vacated.

The State concedes that it is unclear under the language of C.L. § 8–604.1 whether the proper unit of prosecution is the serial number of the counterfeit bill, the denomination of the

counterfeit bill, a transaction at a single time and in a single location, the different defrauded victims, or some other unit of prosecution. Regardless of the unit of prosecution, the State agrees that, under the rule of lenity or fundamental fairness, there should be only one sentence for the two counterfeit bills issued during the August 20, 2006 Family Dollar transaction, one sentence for the two counterfeit bills issued during the October 17, 2006 Famous Pawnbrokers transaction, and one sentence for the two counterfeit bills possessed at the Frederick County Sheriff's Office on September 23, 2006.[7]

■ The key to the determination of the unit of prosecution is legislative intent. *Cunningham v. State,* 318 Md. 182, 184, 567 A.2d 126 (1989); *Randall Book Corp. v. State,* 316 Md. 315, 324, 558 A.2d 715 (1989). The appellate court looks "first to the words of the statute, read in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence." *Cunningham,* 318 Md. at 185, 567 A.2d 126. The rule of lenity may or may not play a part in determining the legislative intent. *Id.* If the legislative intent can be determined

"from the various sources to which we have referred, that intent will be enforced, and the concept of lenity does not become an operable factor. **If, however, the legislative intent cannot be determined,** and the indicia point with equal force in opposite directions, **the rule of lenity dictates that the matter be resolved in favor of the accused and against the possibility of multiple punishments.**"

*Id.* at 185–86, 567 A.2d 126 (quoting *Randall Book,* 316 Md. at 327, 558 A.2d 715) (emphasis added).

---

7. The State does not claim that appellant failed to preserve the issue of the unit of prosecution for appellate review. The State, however, does not agree that the *convictions* regarding the second counterfeit bill should be vacated, because appellant failed pre-trial to object to the charging document or at trial to the verdict sheet, both of which included separate counts for issuing and possessing a second counterfeit bill. Although appellant did not raise this issue below, we shall exercise our discretion under the Maryland Rules and consider the unit of prosecution issue as it is "necessary or desirable to guide the trial court[.]" Md. Rule 8–131(a).

We agree with appellant that there is nothing in the language of C.L. § 8–604.1 to indicate the intent of the General Assembly as to the unit of prosecution. Indeed, the words of the statute appear to "point with equal force in opposite directions." *Randall Book*, 316 Md. at 327, 558 A.2d 715. C.L. § 8–604.1 prohibits possessing or issuing "counterfeit United States currency." The word "currency" is a collective noun that can refer to either a single item or a group of items. For example, "currency" can refer to one $20 bill or to 20 $1 bills. Nor is there anything in the legislative history of C.L. § 8–604.1 to assist in our determination. The rule of lenity thus directs us to resolve this issue in favor of appellant. Analogous Maryland and federal cases support our conclusion.

In the case of *Rudder v. State*, 181 Md.App. 426, 956 A.2d 791 (2008), this Court addressed the unit of prosecution under the theft statute, C.L. §§ 7–104 and 105. Writing for this Court, Judge Charles Moylan, Jr., concluded that the unit of prosecution was the single episode encompassing the illegal conduct. *Rudder*, 181 Md.App. at 471, 956 A.2d 791. He explained:

> "**Where multiple items are stolen from a single owner on a single occasion, the case for aggregation is so compelling that it is generally taken for granted.** If a pickpocket lifts from the pocket of a victim five $1 bills, there is a single theft of $5 as surely as if he had lifted from the same pocket a single $5 bill. If a thief steals from a homeowner (1) a set of silverware, (2) a diamond ring, and (3) a television set, it is a single theft and not three. *A fortiori*, a theft of the family silverware is not 36 or more thefts of 12 spoons, 12 forks, 12 knives, etc.
>
> ... **[T]he unit of prosecution is the total episode of obtaining or exerting unauthorized control over the property of another,** regardless of the amount of property taken. **It is not each item of property thus appropriated.**"

*Id.* at 471–72, 956 A.2d 791 (emphasis in original) (quoting Charles E. Moylan, Jr., Maryland's Consolidated Theft Law and Unauthorized Use § 11.10 (MICPEL 2001)).

The case most analogous to the case *sub judice* was decided by the United States Court of Appeals for the Fourth Circuit in *United States v. Leftenant,* 341 F.3d 338 (4th Cir.2003). The defendant in *Leftenant* was charged with violating 18 U.S.C. § 472 for possessing counterfeit currency. *Id.* at 341. Because he possessed counterfeit bills with six distinct serial numbers at the time of his arrest, the defendant was indicted on six counts of felony possession. *Id.* The defendant moved to dismiss the indictment, maintaining, *inter alia,* that the six counts were multiplicitous. *Id.* at 342. The motion was denied. *Id.* After a one-day jury trial, the defendant was found guilty on all six counts. *Id.* Thereafter, the defendant filed a motion for judgment of acquittal, raising again the argument that the six counts were multiplicitous. *Id.* The trial court denied the motion, and on a later date, sentenced the defendant to six concurrent prison terms of 12 months each and six concurrent terms of three years of supervised release. *Id.*

On appeal, the defendant argued, among other things, that the six separate counts of possessing counterfeit currency in his indictment were multiplicitous. *Id.* at 347. Specifically, the defendant maintained that "he should not have been charged with multiple counts of § 472 possession when he was found in possession of counterfeit currency at a single time and in a single location." *Id.* The Government conceded that a separate possession count for each of six serial numbers on the 11 counterfeit bills found on the defendant was multiplicitous, that the defendant should have only been charged with one count of possession, and that all of the defendant's convictions, save one, should be vacated. *Id.*

In agreeing with the Government, the Court reasoned that the defendant's case was analogous to a situation where an individual is improperly convicted of multiple counts of possessing multiple items of the same contraband that are seized on a single occasion. *Id.* at 347–48. The Court determined that the defendant was similarly "charged and convicted of multiple offenses when the evidence established only a single act of possession." *Id.* at 348. The Court concluded that the

proper remedy was to vacate all of the defendant's convictions, but one. *Id.*

We find the Court's analysis in *Leftenant* persuasive. Like the defendant in *Leftenant,* appellant either possessed and issued, or simply possessed, counterfeit bills with different serial numbers "at a single time and in a single location" on each of the dates at issue. Also, like the defendant in *Leftenant,* appellant was charged and convicted based on the different serial numbers of the bills, not the transaction. In particular, appellant received convictions for each of two counterfeit bills with a different serial number for the August 20, 2006 Family Dollar transaction, the October 17, 2006 Famous Pawnbrokers transaction, and the incident at the Frederick County Sheriff's Office on September 23, 2006.

■ Therefore, in light of the lack of legislative intent, the rule of lenity, and analogous case law, we hold that the unit of prosecution under C.L. § 8–604.1 is the transaction involving the counterfeit currency, and not the counterfeit bills with different serial numbers, nor the different denominations of such bills.

Finally, following the Fourth Circuit's opinion in *Leftenant,* we believe that the appropriate remedy is to vacate both the conviction and sentence of all counts in each separate transaction, except for the count or counts relating to one counterfeit bill. *See Leftenant,* 341 F.3d at 348 (stating that "[w]e vacate Leftenant's other five convictions, five of the six concurrent terms of twelve months imprisonment, and five of the six $100 special assessments"). Accordingly, appellant is entitled to the vacating of her convictions and sentences for possessing and issuing a second counterfeit bill during the August 20, 2006 incident at Family Dollar (Counts 6 and 7) and the October 17, 2006 incident at Famous Pawnbrokers (Counts 32 and 33), and for possessing a second counterfeit bill during the September 23, 2006 incident at the Frederick County Sheriff's Office (Count 37).

### The Doctrine of Merger

We have stated that double jeopardy invokes a number of distinct principles and prohibitions:

> When dealing with a generic category or portmanteau phenomenon such as double jeopardy, it is indispensable at the outset to identify the particular species of double jeopardy being invoked. **There are no less than four such species within the genus "double jeopardy."** Each carries with it a different history; each serves a different purpose; each has different implementing rules. The broad umbrella term we call "double jeopardy" today embraces (in its federal manifestation) four distinct species: 1) classic former jeopardy, arising out of the common law pleas at bar of autrefois convict and autrefois acquit; 2) **simultaneous jeopardy, involving largely issues of merger and multiple punishment and lying on the at-times blurred boundary between constitutional law and statutory construction;** 3) the problem of retrial following mistrial; and 4) collateral estoppel.

*Giddins v. State,* 163 Md.App. 322, 325–26, 878 A.2d 687 (2005) (internal quotations and original emphasis omitted) (emphasis added), *aff'd,* 393 Md. 1, 899 A.2d 139 (2006). It is clear that the issues raised by appellant in the instant appeal implicate the second "species" of double jeopardy, namely, the doctrine of merger.

 " 'The doctrine of merger of offenses for sentencing purposes is premised in part on the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution, applicable to state court proceedings via the Fourteenth Amendment.' " *Jones–Harris v. State,* 179 Md.App. 72, 98, 943 A.2d 1272 (quoting *Abeokuto v. State,* 391 Md. 289, 352–53, 893 A.2d 1018 (2006)), *cert. denied,* 405 Md. 64, 949 A.2d 652 (2008). The merger doctrine, which is derived from both federal and Maryland common law double jeopardy principles, "provides the criminally accused with protection from, *inter alia, multiple punishment stemming from the same offense.*" *Purnell v. State,* 375 Md. 678, 691, 827 A.2d 68 (2003) (emphasis added).

"Under federal double jeopardy principles and Maryland merger law, the principal test for determining the identity of offenses is the required evidence test." *Dixon v. State*, 364 Md. 209, 236, 772 A.2d 283 (2001).

The Court of Appeals described the required evidence test at length in *State v. Lancaster*, 332 Md. 385, 631 A.2d 453 (1993):

> We have often pointed out that under settled Maryland common law, the usual rule for deciding whether one criminal offense merges into another or whether one is a lesser included offense of the other, when both offenses are based on the same act or acts, is the so-called required evidence test.
>
> **The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter. Stated another way,** the required evidence is that which is minimally necessary to secure a conviction for each offense. If each offense requires proof of a fact which the other does not, or in other words, **if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts.** But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts, merger follows[.]
>
> **When there is a merger under the required evidence test, separate sentences are normally precluded. Instead, a sentence may be imposed only for the offense having the additional element or elements.**
>
> When applying the required evidence test to multipurpose offenses, *i.e.,* offenses having alternative elements, a court must examine the alternative elements relevant to the case at issue.

*Id.* at 391–92, 631 A.2d 453 (internal alterations, quotations, ellipses, and citations omitted) (emphasis added).

■■■ If the principles of double jeopardy are not implicated because the offenses at issue do not merge under the required evidence test, merger may still be required under the rule of lenity or the principle of fundamental fairness. *Abeokuto,* 391 Md. at 355–56, 893 A.2d 1018. This Court stated the rule of lenity as follows:

> "Even though two offenses do not merge under the required evidence test, there are nevertheless times when the offenses will not be punished separately. Two crimes created by legislative enactment may not be punished separately if the legislature intended the offenses to be punished by one sentence. It is when we are uncertain whether the legislature intended one or more than one sentence that we make use of an aid to statutory interpretation known as the 'rule of lenity.' Under that rule, if we are unsure of the legislative intent in punishing offenses as a single merged crime or as distinct offenses, we, in effect, give the defendant the benefit of the doubt and hold that the crimes do merge."

*Clark v. State,* 188 Md.App. 185, 207–08, 981 A.2d 710 (2009) (quoting *Monoker v. State,* 321 Md. 214, 222, 582 A.2d 525 (1990)).

In *Marlin v. State,* 192 Md.App. 134, 993 A.2d 1141, *cert. denied,* 415 Md. 339, 1 A.3d 468 (2010), this Court set forth the principle of fundamental fairness:

> Considerations of fairness and reasonableness reinforce our conclusion [to merge]. . . . We have . . . looked to whether the type of act has historically resulted in multiple punishment. The fairness of multiple punishments in a particular situation is obviously important.
>
> * * *
>
> Implicit in this reasoning is the idea that when a single act is sufficient to result in convictions for both offenses, but the victim suffered only a single harm as a result of that act, then as a matter of fundamental fairness there should be

only one punishment because in a real-world sense there was only one crime.

*Id.* at 169, 171, 993 A.2d 1141 (quotations and citations omitted).

## Preliminary Issues

Before applying the doctrine of merger to the case *sub judice*, we need to address and resolve two preliminary issues raised by appellant. First, appellant contends that, when there is a merger of offenses under the required evidence test, the *conviction* and sentence of the merged offense must be vacated. Second, appellant claims that a merger under the required evidence test can occur even though the trial court imposed no sentence on the conviction for the offense that is being merged into the conviction for the greater offense. We disagree with appellant on both issues and shall explain.

### 1.

"In today's usage, ... the meaning of 'convicted' and 'conviction' turns upon the context and purpose with which those terms are used." *Myers v. State,* 303 Md. 639, 642, 496 A.2d 312 (1985). Maryland appellate courts have wrestled with the definition of "conviction" in a number of circumstances. *See Rivera v. State,* 409 Md. 176, 192, 973 A.2d 218 (2009) (deciding that a probation before judgment constitutes a conviction in the context of a coram nobis petition); *Shilling v. State,* 320 Md. 288, 296–97, 577 A.2d 83 (1990) (deciding that a probation before judgment on a motor vehicle charge constitutes a conviction in the context of entitlement to notice under Maryland Rule 4–245 for prosecution as a subsequent offender); *State v. Broadwater,* 317 Md. 342, 343–45, 563 A.2d 420 (1989) (deciding the meaning of conviction in the context of voter qualifications under Maryland election law); *Abrams v. State,* 176 Md.App. 600, 609–610, 933 A.2d 887 (2007) (deciding that a probation before judgment constitutes a conviction in the context of a coram nobis petition); *Gakaba v. State,* 84 Md. App. 154, 157, 578 A.2d 299 (deciding that a probation before judgment on a theft charge does not constitute a conviction in

the context of a petition for post conviction relief), *cert. denied,* 321 Md. 385, 582 A.2d 1255 (1990).

In *In re Montrail M.,* 325 Md. 527, 533, 601 A.2d 1102 (1992), the Court of Appeals considered the meaning of "conviction" in the context of the merger doctrine. A juvenile who was adjudicated involved for, among other things, both possessing a controlled dangerous substance and possessing it with the intent to distribute, argued that the simple possession adjudication had to be vacated by virtue of merger. *Id.* at 529–30, 601 A.2d 1102. After determining that the two crimes were the same offense under the required evidence test, the Court held that merger did not affect the adjudications, because the trial court found that the juvenile in fact committed both acts. *Id.* at 532–33, 601 A.2d 1102. In the words of the Court, "[t]he two adjudications stand inviolate, unaffected by the merger." *Id.* at 533, 601 A.2d 1102.

The Court began its analysis by defining a "conviction" as the finding of guilt. *See id.* The Court stated:

> **In a criminal prosecution a judgment consists of the conviction and the punishment imposed thereon; a conviction does not ripen into a judgment until amercement or a sentence of imprisonment is imposed.** When this is translated into the language of juvenile proceedings, a judgment consists of an adjudication that a child is delinquent because of the commission of a delinquent act, and the disposition made of the child on that adjudication.

*Id.* (emphasis added).

With this definition in mind, the Court proceeded to discuss the mechanics of merger:

> **In a criminal prosecution, a merger does not serve to wipe out a conviction of the merged offense. The *conviction* simply flows into the *judgment* entered on the conviction into which it was merged.** As we have seen, if the merger was prompted by the required evidence test, the lesser offense is merged into the greater offense. So here, the adjudication that [the juvenile] was a delinquent child by reason of committing the delinquent act of the unlawful

simple possession of cocaine flowed into the judgment based on the finding of a delinquent act by reason of the unlawful possession of that drug with the intent to distribute it. **The result is that the *adjudications* as to both delinquent acts stand, unaffected by the merger. In other words, as far as the *adjudications* are concerned, the position of the [juvenile] remains the same, merger or no merger.**

*Id.* at 533–34, 601 A.2d 1102 (italicized emphasis in original) (bolded emphasis added).

The Court concluded that the survival of the conviction upon merger does not violate the principles of merger, because

one of the protections the doctrine of merger affords goes to the preclusion of multiple punishments for the same offense. A merger serves, ordinarily, to preclude a separate sentence on each offense. The permissible punishment is that imposed on the greater offense.

*Id.* at 534, 601 A.2d 1102 (citations omitted).

Therefore, under *Montrail,* where the convictions for two offenses merge under the required evidence test, the doctrine of merger allows only the imposition of a sentence on the greater offense; the *convictions* for both offenses "stand inviolate, unaffected by the merger." *Id.* at 533–34, 601 A.2d 1102.

Judges Richard Gilbert and Charles Moylan, Jr., expounded on this principle in their treatise, Maryland Criminal Law: Practice and Procedure:

**When a defendant is convicted of a greater inclusive offense, double jeopardy considerations protect him from being punished separately for a lesser included offense.** To punish an individual both for an aggravated assault and for the lesser included simple assault would constitute multiple punishment for the same offense, one of the classic evils against which the double jeopardy provision protects. **The question remains of what to do with the lesser included offenses. It is not literally appropriate to acquit the defendant of the lesser offenses, for it is the indisputed fact that he has perpetrated each and every element of**

**those lesser included offenses.** The law's solution is not to reach the illogical conclusion that the defendant is not guilty of the lesser included offenses (at least in the sense of being not guilty upon the merits) but rather to conclude that for purposes of punishment, the lesser included offenses are subsumed or merged into the conviction for the greater inclusive offense. The problem of multiple punishment is thereby avoided.... **Most of our conceptual problems are eliminated when we appreciate that the very notion of merger is something designed simply to avoid multiple punishment. It is not the case that the defendant is not guilty of the lesser offenses; it is rather the case that he is guilty of those lesser offenses but simply is not to be twice punished.**

Richard P. Gilbert & Charles E. Moylan, Jr., *Maryland Criminal Law: Practice and Procedure* 452–53 (1983) (emphasis added).

Appellant, however, relies on the opinion of the Court of Appeals in *State v. Lancaster*, 332 Md. 385, 631 A.2d 453 (1993), for the proposition that "under the required evidence test, [her] *convictions* would merge and all but the conviction for the greater offense ... must be vacated." (Emphasis by appellant). A close reading of *Lancaster*, however, does not support appellant's reliance.

In *Lancaster*, the Court of Appeals was called upon to decide whether Lancaster's conviction for unnatural or perverted sex practices under Maryland Code (1957, 1992 Repl. Vol.), Art. 27 § 554 (which prohibits a person from, *inter alia*, taking into his or her mouth the sexual organ of any other person) merged into appellant's conviction for fourth degree sexual offense under Art. 27, § 464C(a)(2) (which prohibits a person from, *inter alia*, engaging in fellatio with a 14 or 15 year old child and the person is four or more years older than the child). *Id.* at 389–91, 631 A.2d 453. In resolving this issue, the Court of Appeals affirmed this Court's holding that Lancaster's " 'conviction and sentence under § 554 ... merged into his conviction and sentence for the greater offense, fourth degree sexual offense under § 464C.' " *Id.* at 397,

422, 631 A.2d 453 (quoting *Lancaster v. State*, 86 Md.App. 74, 84, 585 A.2d 274 (1991)) (ellipsis in original).

Appellant in the instant case asserts that the merger of the "conviction and sentence" in *Lancaster* resulted in the vacating of the conviction and sentence of the lesser included offense (Art. 27 § 554). She is mistaken. In our mandate in *Lancaster*, this Court did not vacate Lancaster's conviction under § 554, just his sentence. 86 Md.App. at 97, 585 A.2d 274. The Court of Appeals acknowledged such action in its opinion when it stated that "[t]he Court of Special Appeals rejected the State's position on the merger issue, agreed with Lancaster's merger argument, *and vacated the sentence under § 554.*" *Lancaster*, 332 Md. at 396, 631 A.2d 453 (emphasis added). In addition, the language used by the Court in its opinion is consistent with the vacating of only the sentence, not the conviction, for the offense under § 554. For example: "The State has not established any error in the Court of Special Appeals' holding that the § 554 offense is an included offense and, *for sentencing purposes,* merges into the § 464C(a)(2) offense." *Id.* at 401, 631 A.2d 453 (emphasis added). Also, "the State has not argued or even intimated that, if the § 554 offense is included in the § 464C(a)(2) offense under the required evidence test, *the sentence imposed upon the § 554 conviction* can nevertheless stand." *Id.* (emphasis added). Finally, in its mandate, the Court of Appeals affirmed the judgment of this Court, which meant that the Court of Appeals affirmed the vacating of only Lancaster's sentence under § 554.[8] *Id.* at 422, 631 A.2d 453.

---

**8.** Appellant also relies on *Moore v. State*, 163 Md.App. 305, 878 A.2d 678 (2005) and *Mattingly v. State*, 89 Md.App. 187, 597 A.2d 1027 (1991), *cert. denied*, 326 Md. 177, 604 A.2d 444 (1992), 506 U.S. 874, 113 S.Ct. 211, 121 L.Ed.2d 151 (1992). Both cases are inapposite. In *Moore*, we held that the trial court erred by failing to merge the defendant's convictions for violating various credit card offenses with his theft conviction. 163 Md.App. at 309, 878 A.2d 678. As a result, this Court merged his convictions under either the required evidence test or the rule of lenity. *Id.* at 319–21, 878 A.2d 678. In our mandate, however, we vacated only the *sentences* and did not vacate any of the defendant's *convictions* on the merged offenses. *Id.* at 321, 878 A.2d

■ In sum, we hold that under the required evidence test, the merger of a conviction for the lesser included offense into the conviction for the greater offense is *for sentencing purposes only* and results in a single sentence for the greater offense. The conviction for the lesser included offense survives the merger. Accordingly, in the case *sub judice,* we shall vacate only the sentences, and not the convictions, for those offenses that we determine will merge under the required evidence test.[9]

### 2.

The second preliminary issue relates to appellant's contention that a merger under the required evidence test can occur even though the trial court imposed no sentence on the conviction for the offense that is being merged for sentencing purposes into the conviction for the greater offense.

■ As we have previously discussed, the doctrine of merger under the broad umbrella of double jeopardy precludes "multiple *punishments* for the same offense." *Montrail,* 325 Md. at 534, 601 A.2d 1102 (emphasis added); *see Purnell,* 375 Md. at 691, 827 A.2d 68. Thus a separate sentence is prohibited on each offense subject to merger under the required evidence test. *Montrail,* 325 Md. at 534, 601 A.2d 1102; *Middleton v. State,* 318 Md. 749, 757, 569 A.2d

---

678. In *Mattingly,* we reversed three convictions for fraudulent misappropriation by a fiduciary and two convictions for theft, all of which arose from a single act. 89 Md.App. at 203, 597 A.2d 1027. This Court held that the convictions were multiplicitous and constituted impermissibly inconsistent verdicts. *Id.* at 194–200, 597 A.2d 1027. Based on this conclusion, we explicitly did not address the defendant's argument that under either the required evidence test or the rule of lenity, "the theft and fraudulent misappropriation by a fiduciary convictions merge." *Id.* at 200, 597 A.2d 1027. Thus the reversal of the convictions was not based on merger under the required evidence test.

**9.** We would reach the same conclusion when applying the rule of lenity or fundamental fairness. Both principles focus on the issue of multiple punishments for a single act or transaction. *See Clark v. State,* 188 Md.App. 185, 207–208, 981 A.2d 710 (2009); *Marlin v. State,* 192 Md.App. 134, 171, 993 A.2d 1141, *cert. denied,* 415 Md. 339, 1 A.3d 468 (2010).

1276 (1990). The only punishment that is permissible is the one imposed on the greater offense.[10] *Montrail,* 325 Md. at 534, 601 A.2d 1102. From these principles, it logically follows that, if the trial court intentionally imposes no sentence on a conviction for an offense that is subject to being merged, there is no need for a merger to protect a defendant's rights under the double jeopardy clause, because no separate punishment has been imposed.[11] Therefore, because the merger doctrine does not affect the conviction, the intentional imposition of no sentence on a conviction for an offense subject to merger is the functional equivalent of merging that conviction into the conviction for the greater offense for sentencing purposes.[12]

**Merger of Possessing Counterfeit United States Currency into Issuing Counterfeit United States Currency**

■ Appellant argues that her convictions and sentences for possessing and issuing the same counterfeit United States currency violate double jeopardy principles. Drawing a parallel to the possession and distribution of cocaine, appellant contends that the possession and issuance of counterfeit currency in the same transaction constitute a single crime under the required evidence test. Appellant claims further that,

---

**10.** The greater offense under the required evidence test is the one containing the additional element, regardless of the possible penalty. *See, e.g., Fisher v. State,* 367 Md. 218, 285, 786 A.2d 706 (2001). The greater offense for lenity and fundamental fairness is the one carrying the greatest possible penalty. *See, e.g., Abeokuto v. State,* 391 Md. 289, 356, 893 A.2d 1018 (2006); *Monoker v. State,* 321 Md. 214, 222–24, 582 A.2d 525 (1990); *Marquardt v. State,* 164 Md.App. 95, 152–53, 882 A.2d 900 (2005).

**11.** Similarly, in *Turner v. State,* 181 Md.App. 477, 491, 956 A.2d 820 (2008), we stated that, "because there was no disposition rendered on ... [the] two remaining offenses, ... there was nothing to merge at sentencing under the rule of lenity." *Accord Washington v. State,* 190 Md.App. 168, 174, 988 A.2d 61 (2010) (stating that under *Turner* no merger issue was presented because "there was no disposition on the [offense to be merged] and thus 'nothing to merge at sentencing under the rule of lenity' ").

**12.** The result would be the same under the rule of lenity or fundamental fairness. *See* footnote 9, *supra.*

because it is impossible to issue counterfeit currency without possessing it, the offenses must be deemed the same for double jeopardy purposes. Thus, according to appellant, all of the convictions and sentences for possession (Counts 3, 10, 13, 20, 29, and 38) [13] must be vacated under the merger doctrine, even on the counts on which she did not receive a sentence (Counts 10, 13, 20, and 38).

The State responds that it is allowable to have separate convictions for possessing and issuing the same counterfeit currency because the merger doctrine does not affect the convictions of the merged offenses. Thus, according to the State, double jeopardy is not threatened as long as there is only a single punishment in the form of a single sentence for the merged convictions.

■■■ As noted above, appellant was convicted of possessing counterfeit currency in relation to a series of transactions: Count 3 (Family Dollar on August 20, 2006); Count 10 (Super Fresh on August 24, 2006); Count 13 (Rite Aid on August 24, 2006); Count 20 (Family Dollar on August 27, 2006); Count 29 (Famous Pawnbrokers on October 17, 2006) and Count 38 (Magic Mo's Gas Station on August 25, 2006). The jury also convicted appellant of issuing the same counterfeit bills in each respective transaction: Count 4 (Family Dollar on August 20, 2006); Count 11 (Super Fresh on August 24, 2006); Count 14 (Rite Aid on August 24, 2006); Count 21 (Family Dollar on August 27, 2006); Count 30 (Famous Pawnbrokers on October 17, 2006) [14] and Count 39 (Magic Mo's Gas Station on August 25, 2006). Appellant requests this Court to vacate the convictions and sentences for possession on Counts 3, 10, 13, 20, 29, and 38. We shall dispense with appellant's request to vacate the convictions for possessing counterfeit currency, because as previously stated, convictions survive the applica-

---

**13.** Appellant's contention also includes Counts 6 and 32, the convictions and sentences for which we have already vacated, *supra.*

**14.** Appellant does not challenge her conviction or sentence on Count 30.

tion of the merger doctrine. In addition, because the trial court imposed no sentence for the possession convictions under Counts 10, 13, 20, and 38, the doctrine of merger does not apply under the required evidence test.[15] That leaves for our consideration only the possession conviction under Count 3, on which the trial court imposed a three year sentence of incarceration, and the possession conviction under Count 29, on which the trial court imposed a three-year sentence consecutive to Count 3.

We first agree with appellant that, like possession of a controlled dangerous substance and distribution of the same, the possession and issuance of counterfeit currency in the same transaction constitute the "same offense" under the required evidence test. In *Anderson v. State*, 385 Md. 123, 867 A.2d 1040 (2005), two undercover police officers, Detectives Barnes and Butler, each separately purchased two heroin capsules from the defendant in two transactions five minutes apart. *Id.* at 126, 867 A.2d 1040. The defendant removed the capsules from a cigarette pack he was holding. *Id.* After the sales, Detectives Barnes and Butler provided a description of the defendant to Detective Clasing. *Id.* Approximately thirty minutes later, Detective Clasing encountered the defendant, who after being directed by the detective to sit on the curb, tossed a cigarette pack that contained 25 heroin capsules. *Id.* Detective Clasing retrieved the cigarette pack and arrested the defendant. *Id.*

The next day, the defendant was charged with one count of possession of heroin in the District Court, and eight days later he was convicted and sentenced to nine months' incarceration. *Id.* Approximately one month later, the defendant was indicted for possession with intent to distribute and distribution of heroin with regards to the transaction with Detective Butler. *Id.* at 127–28, 867 A.2d 1040. Eight days later, the State secured a second indictment against the defendant for posses-

---

**15.** There would also be no merger under the rule of lenity or fundamental fairness. *See* footnotes 9 and 12, *supra*.

sion of heroin, possession with intent to distribute heroin, and distribution of heroin with regards to the transaction with Detective Barnes. *Id.* at 128, 867 A.2d 1040. After the trial court denied the defendant's motion to dismiss the indictment on double jeopardy grounds, he sought appellate relief. *Id.* at 128–29, 867 A.2d 1040.

The Court of Appeals considered, among other things, whether possession of a controlled dangerous substance is the "same offense" as possession with intent to distribute or actual distribution of the same substance under the required evidence test. *Id.* at 132, 867 A.2d 1040. With regard to the relationship of possession to distribution, the Court set forth the definition of "possess" under C.L. § 5–101(u) and "distribute" under C.L. § 5–101(*l*), as well as the definitions of "deliver" under C.L. § 5–101(h) and "dispense" under C.L. § 5–101(k), the latter two being part of the definition of "distribute" ("to deliver other than by dispensing"). *Id.* The Court then reasoned:

> Putting these various definitions together, distribution occurs when a controlled dangerous substance is delivered, either actually or constructively, other than by lawful order of an authorized provider. It is not possible, under these statutes, to "distribute" a controlled dangerous substance in violation of § 5–602 unless the distributor has actual or constructive possession (dominion or control) of the substance. Thus, possession of the substance distributed is necessarily an element of the distribution. **The crime of distribution obviously contains an element not contained in the crime of possession—the distribution—but there is no element in the crime of possession not contained in the crime of distribution. Upon the same analysis used in [*State v.*] *Woodson* [, 338 Md. 322, 658 A.2d 272 (1995) ], therefore, possession and distribution are the "same" offenses for double jeopardy purposes.**

*Id.* at 132–33, 867 A.2d 1040 (emphasis added).

After determining that all of the charged offenses were part of the same transaction, the Court concluded that the trial

court erred by denying the defendant's motion to dismiss the indictments. *Id.* at 141, 867 A.2d 1040. *See also Hankins v. State*, 80 Md.App. 647, 657–58, 565 A.2d 686 (1989) (holding that the possession with intent to distribute cocaine was a lesser-included offense of distribution of cocaine, which required merger and the vacating of the defendant's sentence for the possession with intent to distribute cocaine).

Following the Court's reasoning in *Anderson*, it is clear that possession of counterfeit currency and the issuance of the same counterfeit currency in a single transaction constitute the same offense under the required evidence test. Just as it is impossible for an individual to distribute a controlled dangerous substance without exercising dominion and control over it, one cannot issue counterfeit currency without possessing it. To avoid offending double jeopardy principles, we are compelled to merge appellant's convictions for possessing counterfeit currency under Counts 3 and 29 into her convictions for issuing the same currency under Counts 4 and 30, respectively, and vacate each merged sentence. Under *Montrail*, however, we do not vacate appellant's convictions under Counts 3 and 29.

### Merger of Issuing Counterfeit United States Currency or Uttering a Forged Document into Theft

Appellant finally argues that, because her convictions for issuing counterfeit United States currency or uttering a forged document provided the sole evidentiary support for her theft or attempted theft convictions, they must be considered the same offense for double jeopardy purposes. Appellant observes that the only evidence to support her theft and attempted theft convictions arose from the same transactions that served as the basis for her issuing or uttering convictions. In the words of appellant's brief, "[t]he State presented no evidence supporting the theft charges against [appellant] apart from the evidence that she had allegedly received property or attempted to receive property by passing counterfeit bills and attempting to pass forged checks." Appellant concludes that her convictions for issuing counterfeit United

States currency (Counts 4, 11, 14, 21 and 39) and uttering forged checks (Counts 66 and 69) merge into the convictions for theft or attempted theft (Counts 8, 12, 15, 22, 40, and 67), thus requiring those convictions and sentences for issuing and uttering be vacated, including those convictions on which appellant did not receive a sentence (Counts 11, 14, 21, and 39).[16]

The State responds that the convictions do not merge, because each offense contains an element of proof that the other does not, thus distinguishing each offense under the required evidence test. The State notes that it is possible to commit a theft without issuing counterfeit currency or uttering a forged check, and vice versa. Although the State acknowledges that the sole evidentiary source for the theft and attempted theft convictions was issuing counterfeit currency or uttering forged checks, it argues that "the crimes are separate and distinct statutory offenses. The convictions themselves do not merge." The State further argues that any merger would only be appropriate under the rule of lenity or fundamental fairness and only merge appellant's sentences, not convictions.

As we did in the previous section on merger of convictions for possessing and issuing counterfeit currency, we shall reject appellant's request to vacate any conviction subject to being merged, because the merger doctrine does not affect convictions. Additionally, because the trial court imposed no sentences for the issuing convictions under Counts 11, 14, 21, and 39, there can be no merger of those convictions into the theft or attempted theft convictions under Counts 12, 15, 22, and 40. What remains for our consideration is only appellant's claim of merger of the issuing conviction under Count 4, upon which the trial court imposed a sentence of three years, into the theft conviction (Count 8), both arising out of the August 20,

---

16. Appellant also seeks merger of her convictions for possession of counterfeit United States currency (Counts 3, 10, 13, 20, and 38) into her theft convictions. As previously decided, Count 3 merged into Count 4, and Counts 10, 13, 20, and 38 are not subject to merger because no sentence was imposed on them.

2006 Family Dollar transaction, and appellant's claim of merger of the uttering convictions (Counts 66 and 69), upon each of which the trial court imposed a 10–year concurrent sentence, into the attempted theft over $500 conviction (Count 67), arising out of the September 6, 2006 M & T Bank transaction.

In support of her argument, appellant cites *Sutton v. State,* 2 Md.App. 639, 236 A.2d 301 (1967), *cert. denied,* 249 Md. 733 (1968), and *Lievers v. State,* 3 Md.App. 597, 241 A.2d 147 (1968), for the proposition that her convictions for issuing counterfeit currency and uttering merge into the theft and attempted theft convictions. Appellant's reliance on these cases, however, is misplaced, because the required evidence test was not applied in either *Sutton* or *Lievers.*

In *Sutton,* the defendant was convicted of uttering and the former offense of false pretenses. 2 Md.App. at 640, 236 A.2d 301. On appeal, this Court held that the crime of uttering merged into the crime of false pretenses. *Id.* at 641, 236 A.2d 301. We observed that the sole evidentiary basis for the false pretenses was the uttering of a forged check. *Id.* In other words, "[t]here was no fact proven in the uttering cases which was not essential for the conviction in the false pretenses cases." *Id.* Based on this reasoning, we vacated the judgments on the uttering counts. *Id.*

Less than a year later, this Court decided *Lievers,* which was legally similar to *Sutton.* The defendant in *Lievers* was convicted of conspiracy to utter a forged check and conspiracy to obtain money by false pretenses. 3 Md.App. at 606, 241 A.2d 147. Again relying on the actual evidence presented, this Court merged the conspiracy to utter into the conspiracy to obtain money by false pretenses. *Id.* at 607, 241 A.2d 147. We noted "that the conspiracy to utter merged into the conspiracy to obtain money by false pretenses since no false representation independent of the uttering of the forged check itself is shown by the evidence." *Id.*

It is clear that this Court in *Sutton* and *Lievers* based our merger analysis on the "actual evidence rule," which states that "offenses are the same if the evidence actually

offered on both is substantially similar." *Thomas v. State,* 277 Md. 257, 265 n. 4, 353 A.2d 240 (1976). In *Brooks v. State,* 284 Md. 416, 397 A.2d 596 (1979), the Court of Appeals explicitly rejected the actual evidence test and stated that "the general test for determining merger of offenses, as well as for deciding whether two offenses should be deemed the same for double jeopardy purposes, is the required evidence test." *Id.* at 420–21, 397 A.2d 596. The rejection of the actual evidence test was later reaffirmed by the Court of Appeals in *Dillsworth v. State,* 308 Md. 354, 519 A.2d 1269 (1987): " 'Required' evidence is not to be confused with 'actual' evidence. Under an actual evidence approach, offenses would merge whenever the evidence actually adduced at trial is substantially the same for both offenses. We have explicitly rejected the actual evidence test as our general standard for determining merger." *Id.* at 357, 519 A.2d 1269. Consistent with this distinction, this Court has noted that "the question of whether offenses are separate for double jeopardy purposes is generally determined by reviewing the charging documents rather than the actual trial evidence." *Ingram v. State,* 179 Md.App. 485, 492, 947 A.2d 74 (2008).

When applying the required evidence test, it is clear that the crimes of issuing counterfeit United States currency and theft are not the "same offense," nor is uttering and attempted theft. As previously discussed, C.L. § 8–604.1 prohibits a person from "knowingly possess[ing], with unlawful intent, or issu[ing] counterfeit United States currency." The elements of issuing counterfeit United States currency are: (1) issuing counterfeit United States currency;[17] and (2)

---

17. The term "issue" is defined in the Criminal Law Article only with reference to "a check." *See* Md.Code (2002, 2010 Cum.Supp.), § 8–101(e) of the Criminal Law Article ("C.L."). The Revisor's Note to C.L. § 8–101(e), however, states that the references to "issuing" are substituted for the former references to "uttering" "for consistency with the Commercial Law Article and with modern commercial practice. *See, e.g.,* [Md.Code (1975, 2002 Repl.Vol.),] § 3–105 [of the Commercial Law Article ("Comm.")]." Comm. § 3–105 the Commercial Law Article defines "issue" as "the first delivery of an instrument by the maker or

knowledge that the United States currency is counterfeit.[18] C.L. § 8–602, which is the statutory crime of "uttering," states that "[a] person, with intent to defraud another, may not issue or publish as true a counterfeit instrument or document listed in § 8–601 of this subtitle." The elements of uttering are: (1) the counterfeit instrument or document must be issued or published as true; (2) the party issuing or publishing must know that the instrument or document is counterfeit; and (3) the issuing or publishing must be done with the intent to defraud. *See Bieber v. State,* 8 Md.App. 522, 542, 261 A.2d 202, *cert. denied,* 258 Md. 725 (1970); *Pearson v. State,* 8 Md.App. 79, 83–84, 258 A.2d 917 (1969).

On the other hand, Maryland's theft statute, which is codified at C.L. § 7–104, is a multi-purpose statute where the single offense of theft can be committed in alternative ways. *State v. Burroughs,* 333 Md. 614, 619, 636 A.2d 1009 (1994) (explaining that C.L. § 7–104's predecessor "create[d] a single offense of theft and set[ ] forth alternative elements that may comprise the offense"). When applying the required evidence test to a multi-purpose criminal statute, "a court must examine the element or elements relevant to the case before it." *Lancaster,* 332 Md. at 398–99, 631 A.2d 453; *see also McGrath v. State,* 356 Md. 20, 24, 736 A.2d 1067 (1999).

In the case *sub judice,* Count 8 of the criminal information charged appellant with "steal[ing] goods and/or U.S. currency of Family Dollar store in Brunswick, having a value of less than $100" on August 20, 2006. Count 67 charged appellant with the "unlawful[ ] attempt to steal $800.00 in U.S. Currency, property of First Rehabilitation Resources, Inc., having a value of $500.00 or greater" on September 6, 2006. The relevant elements of the theft offenses charged in this case are found in C.L. § 7–104(b), which is entitled "Unauthorized control over property—By deception." Section 7–104(b) reads

---

drawer, whether to a holder or nonholder, for the purpose of giving rights on the instrument to any person."

18. The term "counterfeit" is defined as "to forge, counterfeit, materially alter, or falsely make." C.L. § 1–101(c).

in relevant part: "A person may not obtain control over property by willfully or knowingly using deception, if the person: (1) intends to deprive the owner of the property; . . ." The elements of theft or attempted theft by deception thus are (1) obtaining or attempting to obtain control over property, (2) with the intent to deprive the owner of the property, (3) by willfully or knowingly using deception.

 With regard to the offense of issuing counterfeit United States currency (Count 4), the theft offense charged (Count 8) contains an element not found in the issuing offense, namely, obtaining control over property of another. A person may be convicted of issuing counterfeit currency without obtaining control over property of another. The question presented here is whether all of the elements of issuing counterfeit currency are included in theft by deception. It is clear that in the instant case, the deception was proven by the issuing of counterfeit currency with the knowledge that the currency was counterfeit. But the element of deception in the theft statute does not require proof of issuing counterfeit currency. Deception under the theft statute can be proven in a myriad of ways. In other words, issuing counterfeit currency with knowledge of its counterfeit nature is not an element of the offense of theft by deception. It is simply evidence used to prove the element of deception.[19] Therefore, appellant's

---

**19.** This is illustrated by our opinion in *Lloyd v. State*, 42 Md.App. 167, 399 A.2d 932, *cert. denied*, 285 Md. 732 (1979). In *Lloyd*, the defendant was convicted of, among other things, driving while intoxicated. *Id.* at 168, 399 A.2d 932. After the defendant was subsequently charged with manslaughter by automobile, he filed a motion to dismiss the indictment on double jeopardy grounds. *Id.* The defendant argued before this Court that the two crimes were the same offense under the required evidence test. *Id.* at 168–70, 399 A.2d 932. After examining the respective elements of each offense, this Court concluded that driving while intoxicated and manslaughter by automobile were separate crimes for double jeopardy purposes. *Id.* at 171, 399 A.2d 932. We then made the following observation regarding the distinction between the actual evidence and the required evidence tests:

 It should also be noted that even if the State actually adduced no more evidence than [the defendant]'s drunkenness to show the gross negligence element of manslaughter by automobile, there would still

conviction for issuing counterfeit United States currency (Count 4) does not merge into her conviction for theft under $100 (Count 8) arising out of the same transaction under the required evidence test.[20]

Similarly, with regard to the offense of "uttering," the attempted theft offense charged in Count 67 contains an element not found in the uttering offense, namely attempting to obtain control over property of another. A person may be convicted of uttering without attempting to obtain control over property of another.[21] The question again is whether all of the elements of uttering are encompassed in attempted theft by deception. The deception element required for a conviction under Count 67 was proven by evidence of the uttering offense. Deception, however, can be proved in other ways. Indeed, deception in the theft statute was proven in the instant case under Count 8 by evidence of issuing counterfeit currency. Therefore, all of the elements of uttering are not included in the elements of attempted theft by deception, and accordingly Counts 66 and 69 do not merge into Count 67 under the required evidence test.

We conclude, however, that it is necessary to merge appellant's convictions for uttering (Counts 66 and 69) into her conviction for attempted theft of $500 or more (Count 67) for sentencing purposes under the rule of lenity. Appellant's convictions for uttering and attempted theft all arose out of

---

not be double jeopardy because the "required evidence" necessary to prove the two offenses remains legally distinct even though the "actual evidence" is factually similar.
*Id.* at 171–72, 399 A.2d 932.

**20.** The theft conviction (Count 8) also does not merge into the conviction for issuing counterfeit United States currency (Count 4) under any of the merger tests, because the trial court imposed no sentence on that theft conviction.

**21.** We believe that the intent to defraud required for uttering is conceptually distinct from the attempt to obtain property of another. Intent is a state of mind while an attempt "is a substantial step, beyond mere preparation, toward the commission of a crime." MPJI–Cr. 4:02 (1986, 2007 Supp.).

the same transaction, namely, appellant's attempt to cash two forged checks at the M & T Bank on September 6, 2006. Because there is no indication in the language of the statutes governing theft and uttering that the legislature intended separate punishments for these offenses arising out of the same transaction, the rule of lenity requires a merger of the conviction for the offense carrying the lesser potential penalty into the conviction for the offense with the greater possible penalty. *See McGrath*, 356 Md. at 29, 736 A.2d 1067. A conviction for violating the uttering statute, C.L. § 8–602, can be punished by up to ten years' imprisonment or a fine of up to $1,000, or both (C.L. § 8–602(b)), while the penalty for attempted theft by deception of $500 or more was, at the time of appellant's sentencing, up to 15 years' imprisonment or $25,000 fine or both (Md.Code (2002), § 7–104(g)(1) of the Criminal Law Article).[22] Accordingly, we shall vacate appellant's 10–year concurrent sentences for uttering under Counts 66 and 69.

## II.

### WAS THERE SUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTIONS FOR OFFENSES ARISING OUT OF THE INCIDENTS AT SUPER FRESH (COUNTS 10, 11, AND 12), RITE AID (COUNTS 13, 14, AND 15), FREDERICK COUNTY SHERIFF'S OFFICE (COUNTS 35 AND 74), AND BRUNSWICK CITY POLICE DEPARTMENT (COUNT 42)?

Appellant argues that there was insufficient evidence to support her convictions for possessing and issuing counterfeit currency and for theft in connection with the Super Fresh (Counts 10, 11, and 12) and Rite Aid (Counts 13, 14, and 15) transactions on August 24, 2006. According to appellant, the

---

22. Effective October 1, 2009, the penalty for theft of property or services with a value of less than $1,000, but $100 or more, is imprisonment for 18 months or a fine not exceeding $500, or both. C.L. § 7–104(g)(2) & (3). Chapter 655, Acts of 2009.

cashiers from both stores could not identify her as the person who issued the counterfeit bills. Because there was no evidence connecting appellant with the tendering of counterfeit currency during either transaction, appellant concludes that the convictions on these counts must be reversed. Appellant also states that she testified at trial that she did not recall patronizing either Super Fresh or Rite Aid on the day in question.

Appellant also contends that there was no evidence of unlawful intent to support her convictions for possessing counterfeit United States currency (Counts 35 and 42)[23] when she gave the counterfeit bills to law enforcement personnel at the Frederick County Sheriff's Office and the Brunswick City Police Department. According to appellant, the fact that she told the police that the bills were counterfeit belies any claim that she intended to deceive. Finally, appellant maintains that her conviction for providing a false statement to the police at the Frederick County Sheriff's Office (Count 74) cannot stand, because there was insufficient evidence of an intent to initiate a police investigation regarding the First Rehabilitation Resources, Inc. checks. According to appellant, there was already an ongoing police investigation regarding those forged checks.

Before we address appellant's contentions, we must first resolve the issue of the appealability of those convictions on which no sentence was imposed, as well as the State's claim of waiver.

## Appealability

We raise *nostra sponte* the issue of whether appellant's convictions on the counts for which she did not receive a sentence constitute a final judgment for purposes of appeal. No sentence was imposed on appellant's convictions under

---

**23.** Appellant also challenges the sufficiency of the evidence to support her conviction for possessing the second counterfeit bill at the Frederick County Sheriff's Office (Count 37). As previously discussed, we vacated the conviction and sentence under Count 37 based on our determination of the proper unit of prosecution.

Counts 10, 11, 12, 13, 14, 15, and 74. Sentences were imposed on only Counts 35 and 42.

 "It is a long-standing principle of our appellate jurisprudence that generally, an appeal in a criminal case is premature until after final judgment." *Hoile v. State,* 404 Md. 591, 611, 948 A.2d 30 (2008) (quotations omitted). A criminal proceeding is not final "until sentence is imposed on a verdict of guilty." *Chmurny v. State,* 392 Md. 159, 167, 896 A.2d 354 (2006); *accord Johnson v. State,* 142 Md.App. 172, 201–02, 788 A.2d 678 ("[I]n a criminal case, a final judgment is not rendered until the court has entered a verdict and a sentence. In a criminal case, a final judgment consists of a verdict and either the pronouncement of sentence or the suspension of its imposition or execution.") (alteration in original) (internal quotations and citations omitted), *cert. denied,* 369 Md. 180, 798 A.2d 552 (2002). A guilty verdict, standing alone, does not constitute a final judgment. *Chmurny,* 392 Md. at 168, 896 A.2d 354.

We addressed the issue of appealability of a conviction where no sentence was imposed by the trial court in the case of *Sands v. State,* 9 Md.App. 71, 262 A.2d 583 (1970). In *Sands,* the defendant was convicted of grand larceny and breaking the dwelling house of another in the daytime with intent to steal. *Id.* at 73, 262 A.2d 583. The trial court, however, imposed a sentence only on the grand larceny count. *Id.* at 78, 262 A.2d 583.

 The defendant then challenged both convictions based on an allegedly illegal arrest. *Id.* at 73, 262 A.2d 583. This Court noted that generally the defendant would not be able to appeal his conviction on the breaking the dwelling house of another, because there was no sentence and therefore no final judgment on that conviction. *Id.* at 79, 262 A.2d 583. We observed, however, that the trial court clearly intended to impose no sentence on the breaking conviction. *Id.* We stated: "[T]he failure to impose sentence was not by inadvertence but by design." *Id.* Because the trial court clearly decided not to impose a sentence on that conviction, we concluded that we

had the ability to consider appellant's appeal. *Id. Cf. Ridge-way v. State,* 140 Md.App. 49, 63, 779 A.2d 1031 (2001), *aff'd,* 369 Md. 165, 797 A.2d 1287 (2002) (citing *Sands* for the proposition that "no appeal lies from a conviction where inadvertently no sentence was imposed"). Our research indicates that *Sands* remains good law in Maryland. Therefore, we hold that, for the limited purposes of determining appealability, where the trial court imposes a sentence on one or more, but not all, convictions and has clearly completed the sentencing process, the intentional imposition of no sentence by the court on a conviction creates a final judgment on that conviction from which a defendant can appeal.

 As in *Sands,* the trial court in the matter *sub judice* purposefully did not sentence appellant on Counts 10 through 15 and 74. During sentencing, the trial court announced that "[t]he following counts are entered as convictions: 74, 6, 7, 8, 10, 11, 12, 13, 14, 15, 20, 21, 22, 38, 39, 40." The court's intent is also reflected in the court's addendum to the sentencing guideline worksheet, the commitment record, the courtroom worksheet, and the docket entries. All four documents stated: "Conviction(s) entered" on or for the aforesaid counts. There clearly was no inadvertence in the court's imposition of no sentence on those convictions, nor was there any expression of an intention on the part of the court to take further or subsequent action with respect to sentencing on those convictions. Therefore, we will consider appellant's appeal with regard to her convictions under Counts 10, 11, 12, 13, 14, 15, and 74, because the trial court purposefully did not impose a sentence on each of those convictions.

### Waiver

 The State maintains that appellant's evidentiary sufficiency arguments, with the possible exception of Counts 10, 11, and 12, have been waived. According to the State, appellant failed to renew her motion for judgment of acquittal after she rested. We agree that appellant has not preserved her issue regarding the sufficiency of the evidence on Counts 13, 14, 15, 35, 42, and 74.

Maryland Rule 4–324 governs the procedure for motions for judgment of acquittal:

(a) **Generally.** A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.

\*　　\*　　\*

(c) **Effect of denial.** A defendant who moves for judgment of acquittal at the close of evidence offered by the State may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the defendant withdraws the motion.

Rule 4–324(a) & (c).

We have stated that under Rule 4–324, "when a defendant moves for judgment of acquittal at the close of the State's case-in-chief, but fails to renew the motion at the close of all of the evidence, a challenge to the sufficiency of the evidence is not properly before the appellate court." *McCracken v. State,* 150 Md.App. 330, 365, 820 A.2d 593 (2003); *accord Ruth v. State,* 133 Md.App. 358, 365, 757 A.2d 152 (holding that a defendant "failed to preserve his sufficiency argument for our review" when he moved for judgment of acquittal after the State's case but did not renew said motion after offering his defense), *cert. denied,* 361 Md. 435, 761 A.2d 933 (2000).

After the State rested in the instant case, appellant moved for judgment of acquittal as to all 38 counts. Appellant presented a thorough and extensive argument. The trial court denied appellant's motion with the exception of Count 75, which was granted. Once the trial court ruled on appellant's motion for judgment of acquittal, appellant presented a

defense by testifying on her own behalf and calling her daughter as a witness. Thus, under the provisions of Rule 4–324, appellant withdrew her motion for judgment of acquittal. Rule 4–324(c). Appellant then rested, but did not renew her motion for judgment of acquittal.

Thereafter, the trial court was instructing the jury on general principles of the law when the machine recording the instructions malfunctioned. While the court attempted to fix the tape recorder, the following colloquy took place at the bench:

> [DEFENSE COUNSEL]: I just, I don't want to belabor motions for [judgments of] acquittal, but I do want for the record to renew one of them.
>
> THE COURT: Okay.
>
> * * *
>
> THE COURT: **I'm gonna allow you to renew your motion for judgment of acquittal as to all the counts that you raised at the end of the State's case, okay?**
>
> [DEFENSE COUNSEL]: Right. **The, the only one I want to renew is with regard to Counts 10, 11 and 12, the August 24th incident at SuperFresh.** Again, this is the incident where during the State's case we had no idea the money, now again, the money came into evidence but only as the money that Officer Stafford picked up at the SuperFresh. Rose Abrecht could not ID the money as that which was handed to her. She also not only cannot ID [appellant], but actually says she didn't think it was [appellant]. Now the reason I'm renewing the motion is [appellant]'s testimony that she doesn't even recall having been at SuperFresh on August 24th. Given that testimony and the fact we have no ID and no ID of the money as the actual counterfeit money, **we would renew the motion for judgment of acquittal on [Counts] 10, 11 and 12.**

(Emphasis added).

The State responded to appellant's argument. The trial court then denied appellant's motion for judgment of acquittal:

THE COURT: Because I believe the State has presented sufficient evidence from which a reasonable trier of fact (inaudible—one word) from that evidence and any reasonable inferences they may draw from that evidence that the, um, to prove every element of the crime beyond a reasonable doubt. **Allow you to renew as to all your other motions, however the Court continues to deny those motions.** I find the State has continued to present evidence from which a reasonable trier of fact could find every element under the facts—

[DEFENSE COUNSEL]: Thank you—

THE COURT: Okay?

[THE STATE]: Thank you, Your Honor.

(Emphasis added).

The record clearly shows that, when the trial court presented the opportunity to make a motion for a judgment of acquittal, defense counsel stated that he "only . . . want[ed] to renew [ ] with regard to Counts 10, 11 and 12." At the end of his brief argument, defense counsel again stated that he "would renew the motion for judgment of acquittal on [Counts] 10, 11 and 12." No mention was made by defense counsel of Counts 13, 14, 15, 35, 42, or 74.

Additionally, after denying appellant's renewed motion for judgment of acquittal as to Counts 10, 11, and 12, the court said to defense counsel: "Allow you to renew as to all your other motions, however the Court continues to deny those motions." We conclude that such statement by the court did not have the effect of renewing appellant's motion as to any other count, because defense counsel did not respond to the trial court's offer, other than to say "Thank you," and never stated that he wished to renew the motion as to any other count. Moreover, even if there was a renewal of the motion as to any other count, defense counsel did not "state with particularity all reasons why the motion should be granted," Rule 4–324(a), thereby failing to preserve the right to challenge any such count on appeal. *See, e.g., State v. Lyles,* 308 Md. 129, 135–36, 517 A.2d 761 (1986). Thus appellant did not preserve

for appellate review the issue of the sufficiency of the evidence to support her convictions on Counts 13, 14, 15, 35, 42, and 74.

 The State, nevertheless, contends that appellant also waived her sufficiency claims regarding Counts 10, 11, and 12, because the renewed motion for judgment of acquittal was made after the trial court began instructing the jury and therefore was "clearly untimely." We disagree and conclude that appellant's issue on these counts is properly before this Court. The State did not object to appellant's motion on Counts 10, 11, and 12, and the trial court ultimately ruled on it. *See Middleton v. State,* 67 Md.App. 159, 166, 506 A.2d 1191 (issue preserved when appellant made "motion for judgment of acquittal after the jury ha[d] been instructed, where the State d[id] not object and the court rule[d] on that motion"), *cert. denied,* 308 Md. 146, 517 A.2d 771 (1986), *overruled on other grounds by Fairbanks v. State,* 331 Md. 482, 629 A.2d 63 (1993). In sum, under Rule 4–324, appellant has preserved for appellate review her evidentiary sufficiency issue only on Counts 10, 11, and 12.

### Sufficiency of the Evidence

Appellant asserts that there was insufficient evidence to support her possessing and issuing counterfeit United States currency and theft convictions in connection with the Super Fresh transaction on August 24, 2006 (Counts 10, 11, and 12). Appellant notes that Abrecht, the Super Fresh cashier who received the counterfeit currency, could not identify appellant as the person who presented the counterfeit bill. Indeed, according to appellant, Abrecht testified that she believed appellant was *not* the individual who presented the currency in question. Because there was no evidence connecting appellant with either the possession or issuance of counterfeit United States currency during that transaction, appellant concludes that the convictions on Counts 10, 11, and 12 must be reversed. Appellant also notes that she testified at trial that she did not recall patronizing Super Fresh on the day in question and was somewhere else on August 24, 2006.

The State counters that there was sufficient evidence to support appellant's convictions regarding these counts. Specifically, the State notes that the counterfeit bill recovered from Super Fresh had the same serial number as the counterfeit bills obtained by the police from appellant the next day at the Magic Mo's gas station. According to the State, those facts support the inference that appellant was involved in both incidents.

## Standard of Review

"A review of the question regarding the sufficiency of the evidence in a jury trial requires us to ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Allen v. State*, 402 Md. 59, 71, 935 A.2d 421 (2007) (internal quotations omitted). "It is not the province of an appellate court to retry the case; rather, we review the evidence and all inferences in a light most favorable to the State." *Id.* at 77, 935 A.2d 421. Indeed, we have recently restated that "[t]he fact-finder possesses the ability to choose among differing inferences that might possibly be made from a factual situation, and the appellate court must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen a different reasonable inference." *Burlas v. State*, 185 Md.App. 559, 568, 971 A.2d 937 (second and third alterations in original) (quotations omitted), *cert. denied,* 410 Md. 166, 978 A.2d 245 (2009).

## Analysis

The jury found appellant guilty of Counts 10 and 11, which alleged the possession and issuance of counterfeit United States currency on August 24, 2006 at the Brunswick Super Fresh in violation of C.L. § 8–604.1. As previously stated, under the statute, "[a] person may not knowingly possess, with unlawful intent, or issue counterfeit United States currency." C.L. § 8–604.1(a). Appellant also was convicted under Count 12 of theft under $100 in violation of C.L. § 7–104,

which states that "[a] person may not obtain control over property by willfully or knowingly using deception, if the person ... intends to deprive the owner of the property." C.L. § 7–104(b)(1).

After viewing the evidence in the light most favorable to the State, there was sufficient evidence for a rational trier of fact to have found appellant guilty beyond a reasonable doubt of possessing counterfeit currency, issuing counterfeit currency, and theft under $100. At trial Abrecht testified that a co-worker presented her with a suspicious $20 bill from Abrecht's cashier drawer. Abrecht recalled that "as soon as I touched it I knew it wasn't real." While on a break, Abrecht gave "this funny bill" to Officer Stafford, who was returning from responding to a report of counterfeit currency being passed at a Rite Aid store in the same shopping center. Upon receiving the bill, Officer Stafford filled out a property log and noted that the counterfeit $20 provided by Abrecht bore a serial number of GE06428089D.

The State later called Officer Melissa Zapato as a witness to recount another transaction involving counterfeit currency. Officer Zapato testified that on August 25, 2006, which was only one day after the Super Fresh incident, she responded to a report of counterfeit currency being issued at the Magic Mo's gas station and convenience store in Frederick. Officer Zapato obtained one counterfeit $20 bill from the owner of Magic Mo's, which bill appellant had tried to use to pay for gas. Officer Zapato then obtained another counterfeit $20 bill directly from appellant. Officer Zapato later inventoried the two $20 bills and noted that both bills had a serial number of GE06428089D, which was identical to the serial number on the bill recovered from the Super Fresh incident.

Although appellant correctly points out that Abrecht was not able to identify the individual who tendered the counterfeit $20 bill at Super Fresh on August 24, 2006, the State produced evidence that the very next day appellant was in possession of two additional $20 counterfeit bills bearing the same serial number as the bill recovered from the Super

Fresh cash register drawer. "[P]roof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts." *Rivers v. State,* 393 Md. 569, 589, 903 A.2d 908 (2006) (internal quotations omitted). Appellant also states that Abrecht believed that appellant was not the individual who presented the counterfeit currency at Super Fresh. It is the province of the jury, however, to determine what weight, if any, to give to a witness's testimony. *See Taylor v. State,* 407 Md. 137, 171–72, 963 A.2d 197 (2009) ("[W]hat evidence to believe, what weight to be given it, and what facts flow from that evidence are for the jury, not the judge to determine.") (alteration in original) (internal quotations omitted). Ultimately, we conclude that there was sufficient evidence from which a rational jury could convict appellant of possessing and issuing counterfeit currency in violation of C.L. § 8–604.1 and theft under $100 in violation of C.L. § 7–104 regarding the Super Fresh incident.

## III.

### SHOULD THIS COURT REMAND FOR RE–SENTENCING?

Appellant argues that the trial court should be allowed to exercise its ability to re-sentence her because it would be in the interest of justice to do so. According to appellant, the "multiplicitous and meritless" charges resulted in a higher statutory maximum sentence and sentencing guidelines, on which the trial court relied in fashioning its sentence for appellant. Appellant claims that, if the defective counts were removed, both the statutory maximum sentence and sentencing guidelines would be reduced. Appellant maintains that such error cannot be deemed harmless. Furthermore, appellant states the failure to remand this case for re-sentencing before a different judge would encourage prosecutors to intentionally include multiplicitous counts in an indictment or information in order to produce the possibility of a

longer sentence.[24]

The State responds by claiming that appellant's sentence was constitutionally permissible. Additionally, the State argues that the trial judge was neither tainted by "impermissible considerations" nor imposed a sentence outside the statutory limits. According to the State, the fact that the trial judge imposed concurrent sentences, chose not to impose sentences for some convictions, and suspended certain consecutive sentences confirms "the careful and thoughtful effort to impose a fair and reasonable sentence by the sentencing judge." We agree with the State.

Appellant did not appeal her convictions and/or sentences for 13 of 37 counts. The sentences for many of those unappealed counts were for substantial suspended or concurrent time. Of the 24 counts challenged in the instant appeal, we vacated the convictions and sentences on five counts, vacated the sentences on four counts, and affirmed the judgments on the remaining 15 counts. Three of those 15 counts and two of the unappealed counts carry the total of the active incarceration imposed by the trial court. We fail to see how our opinion in the instant appeal affects the fair and reasonable sentence that the trial judge imposed on appellant.

The Court of Appeals has stated that

[i]t is also well settled that only three grounds for appellate review of sentences are recognized in this State: (1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) whether the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations; and (3) whether the sentence is within statutory limits.

*Jackson v. State*, 364 Md. 192, 200, 772 A.2d 273 (2001) (quotations and emphasis omitted). Following these guidelines, we find nothing in the record to support the conclusion

---

**24.** In a footnote, appellant also asserts that the trial court committed "two other errors" in the sentencing guidelines worksheet. Appellant has failed to identify those additional errors, and we decline to speculate on what they might be.

that the trial judge abused her "wide discretion in achieving the principal objectives of sentencing—punishment, deterrence, and rehabilitation" in fashioning appellant's sentence. *Medley v. State*, 386 Md. 3, 6, 870 A.2d 1218 (2005).[25]

## IV.

## CONCLUSION

Given the complexity of the legal issues and factual circumstances presented by the case *sub judice*, we shall summarize the results of our holdings on the convictions received and sentences imposed on appellant by setting forth again the chart of appellant's convictions and sentences, with any changes noted in bold italics and strikeout:

| COUNT | DATE | CRIME | SENTENCE |
|---|---|---|---|
| *Family Dollar*—Counts 3, 4, 6, 7, & 8 | | | |
| 3 | 8/20/06 | Poss. Counterfeit (244B) | *sentence of 3 years vacated* |
| 4 | 8/20/06 | Issue Counterfeit (244B) | 3 years ~~concurrent~~ |
| 6 | 8/20/06 | Poss. Counterfeit (9094B) | *conviction vacated* |
| 7 | 8/20/06 | Issue Counterfeit (9094B) | *conviction vacated* |
| 8 * | 8/20/06 | Theft Under $100 | No sentence |

\* Asterisked counts were not challenged in the instant appeal.

| COUNT | DATE | CRIME | SENTENCE |
|---|---|---|---|
| *Super Fresh*—Counts 10, 11, & 12 | | | |
| 10 | 8/24/06 | Poss. Counterfeit (8089D) | No sentence |
| 11 | 8/24/06 | Issue Counterfeit (8089D) | No sentence |
| 12 | 8/24/06 | Theft Under $100 | No sentence |
| *Rite Aid*—Counts 13, 14, & 15 | | | |
| 13 | 8/24/06 | Poss. Counterfeit (8089D) | No sentence |
| 14 | 8/24/06 | Issue Counterfeit (8089D) | No sentence |
| 15 | 8/24/06 | Theft Under $100 | No sentence |
| *Family Dollar*—Counts 20, 21, & 22 | | | |
| 20 | 8/27/06 | Poss. Counterfeit (7330A) | No sentence |
| 21 | 8/27/06 | Issue Counterfeit (7330A) | No sentence |

**25.** In light of our decision, we deny the State's Motion to Strike Portions of the Appendix to Brief of Appellant.

| COUNT | DATE | CRIME | SENTENCE |
|---|---|---|---|
| 22 * | 8/27/06 | Attempted Theft Under $500 | No sentence |
| *Famous Pawnbrokers—Counts 29, 30, 32, & 33* | | | |
| 29 | 10/17/06 | Poss. Counterfeit (5251C) | *sentence of 3 years consecutive to Count 3 vacated* |
| 30 * | 10/17/06 | Issue Counterfeit (5251C) | 3 years ~~concurrent~~ *consecutive to Count 4* |
| 32 | 10/17/06 | Poss. Counterfeit (8286A) | *conviction and sentence vacated* |
| 33 | 10/17/06 | Issue Counterfeit (8286A) | *conviction and sentence vacated* |

\* Asterisked counts were not challenged in the instant appeal.

| COUNT | DATE | CRIME | SENTENCE |
|---|---|---|---|
| *Frederick Sheriff—Counts 35, 37, & 74* | | | |
| 35 | 9/23/06 | Poss. Counterfeit (6446D) | 3 years consecutive to Counts *4 and 30* |
| 37 | 9/23/06 | Poss. Counterfeit (1139B) | *conviction and sentence vacated* |
| 74 | 9/23/06 | False Statement to Police Officer | No sentence |
| *Magic Mo's—Counts 38, 39, & 40* | | | |
| 38 | 8/25/06 | Poss. Counterfeit (8089D) | No sentence |
| 39 | 8/25/06 | Issue Counterfeit (8089D) | No sentence |
| 40 * | 8/25/06 | Attempted Theft Under $100 | No sentence |
| *Brunswick PD—Count 42* | | | |
| 42 | 8/27/06 | Poss. Counterfeit (7553) | 3 years consecutive to Counts *4, 30,* and 35 |
| *Appellant's Home—Counts 44, 64, 72, & 73* | | | |
| 44 * | 10/20/06 | Poss. Counterfeit (4715A) | 3 years consecutive to Counts *4, 30,* 35, and 42 |
| 64 * | 10/20/06 | Forgery Money Order # 24055 | 10 years consecutive suspended |
| 72 * | 10/20/06 | Poss. Image of U.S. Currency | 10 years consecutive suspended |
| 73 * | 10/20/06 | Possess Image of U.S. Currency | 10 years concurrent |
| *Famous Pawnbrokers—Counts 47 & 48* | | | |

| | | | |
|---|---|---|---|
| 47 * | 8/30/06 | Forgery Money Order # 24055 | 10 years consecutive suspended |
| 48 * | 8/30/06 | Uttering Money Order # 24055 | 10 years consecutive suspended |

* Asterisked counts were not challenged in the instant appeal.

| COUNT | DATE | CRIME | SENTENCE |
|---|---|---|---|
| *M & T Bank*—Counts 65, 66, 67, 68, 69, & 70 | | | |
| 65 * | 9/6/06 | Forgery Check # 9830 | 10 years concurrent |
| 66 | 9/6/06 | Uttering Check # 9830 | *sentence of 10 years concurrent vacated* |
| 67 * | 9/6/06 | Attempted Theft $500 or More from First Rehabilitation, Inc. | 15 years concurrent |
| 68 * | 9/6/06 | Forgery Check # 9834 | 10 years concurrent |
| 69 | 9/6/06 | Uttering Check # 9834 | *sentence of 10 years concurrent vacated* |
| 70 | 9/6/06 | Attempted Theft $500 or More from First Rehabilitation, Inc. | Merged with Count 67 |

* Asterisked counts were not challenged in the instant appeal.

Finally, the only other change reflected in the above chart involves the proper identification of the consecutive counts of active incarceration. Under the original sentence, the sentence on Count 4 was concurrent with Count 3, Count 30 was concurrent with Count 29. The sentence on Count 29 was made consecutive to Count 3, and Count 35 was consecutive to Counts 3 and 29. With the vacating of the sentences on Counts 3 and 29, Count 4 becomes the lead count, the sentence on Count 30 is consecutive to Count 4, and the sentence on Count 35 is consecutive to Counts 4 and 30. Similarly, the sentence on Count 42 is consecutive to Counts 4, 30, and 35, and the sentence on Count 44 is consecutive to Counts 4, 30, 35, and 42. In other words, this opinion does not change the period of active incarceration imposed by the trial court.

**CONVICTIONS AND SENTENCES ON COUNTS 6, 7, 32, 33, AND 37 VACATED; SENTENCES ON COUNTS 3, 29, 66, AND 69 VACATED; JUDGMENTS OF THE CIR-**

CUIT COURT FOR FREDERICK COUNTY AS TO ALL OTHER COUNTS AFFIRMED; CASE REMANDED TO THAT COURT FOR THE ISSUANCE OF AN AMENDED COMMITMENT RECORD CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 2/3 BY APPELLANT AND 1/3 BY FREDERICK COUNTY.

